McEACHRAN v. GRAND TRUNK RAILWAY CO.

1. CARRIERS OF FREIGHT—PREPAYMENT OF CHARGES—WAIVER—BURDEN OF PROOF.
     One who relies upon the authority of an employé of a common carrier to waive the right to prepayment of freight charges before delivery of the cars has the burden of showing authority

2. SAME—WHAT CONSTITUTES WAIVER.
     A railroad employé does not waive the right of the company to a prepayment of freight charges before delivery of the cars, and to car rental for delay of the consignee, by responding "all right" to a statement by the consignee that he will give a disposal order for the cars, and will send the amount of the freight whenever he gets the expense notices and knows the amount.

Error to Wayne; Lillibridge, J. Submitted November 6, 1897. Decided December 15, 1897.

Trover by William A. McEachran and another against the Grand Trunk Railway Company of Canada. From a judgment for defendant on verdict directed by the court, plaintiffs bring error. Affirmed.

Plaintiffs had purchased in Canada seven car loads of wood, which were shipped to them at Detroit, over the defendant's road. January 28th Mr. McEachran learned that the cars had arrived, and were standing in defendant's yard. He went immediately to one of the offices of

the defendant, but not to the regular freight office where he always paid his freight. He testified that he there "had a conversation or inquiry about the wood with one of the men, whose name he did not know; that he knew him by sight, and had had a very little business at that office before." He left with him a disposal order,—that is, a direction where to deliver the wood,—and said he would send the amount of freight charges when he got the expense notices. He ordered four of the cars to be delivered on defendant's own track, known as the "Public Team Track," and three to be sent to the private track of one Koenig. The four were delivered, and no reference is necessary to them. Plaintiffs sent a check for the freight by mail. The check was dated January 29th, but on the envelope in which it was inclosed was the post-office stamp showing that it was received and mailed on January 31st, at noon. It reached defendant on the afternoon of that day. Under the car-service rules of the company, a charge of one dollar per car was made when cars were delayed beyond 48 hours in loading or unloading. Plaintiffs did not pay the freight within 48 hours, and a charge of one dollar per car was made. This plaintiffs refused to pay, and sued defendant in trover for a conversion of the wood. The court directed a verdict for the defendant.

*Lehman Bros.* and *F. J. Riggs*, for appellants.

*Edwin F. Conely* and *Orla B. Taylor*, for appellee.

Grant, J. (*after stating the facts*). At the conclusion of the evidence, plaintiffs' counsel conceded the reasonableness of the car-service rule, but claimed that payment of freight before delivery of the cars had been waived. The question of waiver is therefore the only one before us. Plaintiffs claim that this should have been submitted to the jury. The court held that there was no evidence to show authority in the employé, with whom Mr. McEachran talked, to waive payment.

The right of a common carrier to the prepayment of freight charges before delivery is important. When a party relies upon the authority of an employé of the carrier to waive that right, it is incumbent upon him to show authority. Plaintiffs relied upon an employé whom they did not know, and who was not employed in the office where such business was customarily transacted. If they had met some employé in the yard, they might as well have claimed that he had authority to extend credit by waiving payment. We are not dealing with a case where a party applies to the regular office, and there receives information from one who is apparently in a position to represent the company.

But, under the plaintiffs' own showing, there was no waiver. The conversation relied on to constitute a waiver is thus stated by Mr. McEachran:

"I went there, and said that I had some wood there; and I said that I would give him a disposal order, and I wrote out the disposal order for the seven cars; and I said, 'I will send the amount of freight whenever I get the expense notices, and know the amount of freight.' The disposal order was written in pencil. I kept no copy. I wrote out the order. I handed it to him, and he said, 'All right.'"

There is not in this language any promise, express or implied, to waive the rules of the company. Plaintiffs knew that prepayment was required, and that car rental would be charged after 48 hours. They had ample notice and ample opportunity to pay it within that time. Not a word was said about deferring payment. They had the 29th and 30th in which to pay and receive their property. Mr. Parker, the assistant cashier in the freight office, called plaintiffs by telephone on the 29th and 30th, and informed them that the check had not come, and that car rental would be charged on the 31st. There was no agreement that defendant should assume the risk of the mail, or that payment should be made by depositing the check in the mail-box. The reply of the employé, "All

right," meant only this: " I will take your disposal order, and, when the freight charges are paid, will comply with it."

Judgment affirmed.

The other Justices concurred.