## WABASH RAILWAY CO. *v.* BLOOMGARDEN.

1. CARRIERS—FREIGHT CHARGES—LIABILITY—ACCEPTANCE OF SHIP-MENT.

In an action for freight and icing charges on two car loads of peaches, where defendant produced the bills of lading and received the peaches, he became, so far as plaintiff railroad company was concerned, the consignee of the shipment and liable for the freight and other charges pursuant to the conditions indorsed on said bills of lading.

2. SAME—AFFIRMATIVE DEFENSE—NOTICE.

The defense that defendant, by agreement with a representative of plaintiff, was to take the peaches without making payment of such charges is an affirmative defense, of which plaintiff was entitled to notice under Circuit Court Rule No. 23, § 2.

3. SAME—DIRECTED VERDICT.

Where no such notice was given in reference to one of said cars, a directed verdict for defendant *held*, reversible error.

4. SAME—FREIGHT CHARGES—LIABILITY OF CONSIGNOR.

Consignor having stricken out the words "we pay" in the bill of lading, *held*, that it had a right to expect that plaintiff would not deliver the peaches without payment of the freight.

5. SAME—AFFIRMATIVE DEFENSE — RELEASE — BURDEN OF PROOF—PRINCIPAL AND AGENT.

In order to establish his defense that he was released from liability for the freight charges by agreement with plaintiff's representative, the burden was upon defendant to show that said agreement was made with a representative of plaintiff having authority to make the same, and that the consignor consented thereto.

6. SAME — FREIGHT CHARGES — AGREEMENT WITH CONSIGNOR—VA-LIDITY.

There is no rule of law, which, on defendant's refusing to accept the peaches, owing to their damaged condition,

would prevent the plaintiff from agreeing with the consignor to look to it alone for the freight charges.

7. SAME—PRINCIPAL AND AGENT—AGENT'S AUTHORITY—EVIDENCE —QUESTION FOR JURY.

The authority of plaintiff's employee· to make the alleged agreement relied upon by defendant, *held*, under the evidence, a question for the jury.

8. SAME—TELEGRAPHS AND TELEPHONES—EVIDENCE—ADMISSIBILITY —NOTICE.

Testimony by defendant as to certain telephone conversations with the consignor, and the receipt in evidence of a telegram from it, *held*, inadmissible unless· such matters were communicated to plaintiff at the time the alleged new agreement was made.

Error to Wayne; Hosmer (George S.), J. Submitted October 12, 1920. (Docket No. 88.) Decided December 21, 1920.

Assumpsit by the Wabash Railway Company against Abraham J. Bloomgarden for certain freight and icing charges. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Beaumont, Smith & Harris* (*Thomas B. Moore*, of counsel), for appellant.

SHARPE, J. Plaintiff sues to recover the freight and icing charges on two car loads of peaches shipped from Willard, Utah, to Detroit in September, 1914. The shipments were made by the Gibson Fruit Company, consigned to itself at Chicago, in two cars, numbered P. F. E. 11223 and P. F. E. 468, over the Oregon Short Line railroad. On the arrival of the cars in Chicago, they were reconsigned by the consignee to its own order at Detroit, with instructions to notify the defendant, "Allow inspection without bill of lading," "Protect through rate," "Charges follow," the words "we pay" being stricken out. The cars were

forwarded to Detroit by the plaintiff, arriving there about September 17th, and the defendant notified. The bills of lading were attached to two drafts for $500 each and sent by the fruit company to a bank in Detroit for collection. The defendant paid the drafts, delivered the bills of lading to plaintiff, and received the contents of the cars.

Plaintiff's declaration consists of two special counts, each setting up the transportation and delivery of a specific car to the defendant. The common counts were added. A bill of particulars of the freight and refrigeration charges on each car was furnished. The defendant with his plea of the general issue gave notice that he would prove that the fruit company was the owner of the peaches in car No. 11223; that the same were turned over to him by the company to be sold on commission; that they were in bad condition, and that, acting under instructions from the fruit company, he disposed of them for the highest price possible. Car No. 468 was not mentioned in the notice.

The defendant testified that when the cars arrived in Detroit he inspected the peaches and found them almost worthless and refused to accept them. He was permitted to prove in his defense, over plaintiff's objection, that he told the man in charge of plaintiff's office that the peaches "would not bring the freight, * * * it was up to Mr. Gibson to pay for them, and Mr. Gibson had to communicate with them with reference to this"; that he then communicated with the fruit company at Chicago by letter, telegram and telephone, and at its urgent request, as evidenced by a telegram reading, "Take care drafts those last cars peaches will protect you refund immediately any amount you be short," he took up the drafts and delivered the bills of lading to plaintiff; that when he did so he told the man in charge of plaintiff's office that he "was not going to pay the freight on them,"

and the man told him "to go ahead and take them"; that he unloaded the peaches and sold them for the best price he could get for them, receiving $126 therefor; that he credited this amount on the $1,000 he had paid and has not been paid the balance.

The defendant was on the "credit list" of the plaintiff company and entitled to receive freight without paying cash therefor. The claim of the plaintiff, with interest, amounted to $833.07. After the proofs were submitted, the trial court directed a verdict for the defendant. From the judgment entered thereon, plaintiff appeals. No brief has been filed on behalf of the defendant.

1. Section 8 of the conditions indorsed on the bill of lading reads as follows:

"The owner or consignee shall pay the freight, and all other lawful charges accruing on said property, and, if required, shall pay same before delivery." * * *

The bills of lading were attached to the drafts, and defendant well understood that he could not secure delivery of the peaches without their surrender. The consignment to Detroit was to the order of the Gibson Fruit Company, notify A. J. Bloomgarden. When the defendant produced the bills of lading and surrendered them and received the peaches, he became, so far as the plaintiff was concerned, the consignee of the shipment and liable for the freight charges. He seeks, however, to absolve himself therefrom by proof of an agreement made between him and a representative of plaintiff whereby he "was to go ahead and take them" without making payment of such charges. This was clearly an affirmative defense, of which the plaintiff was entitled to notice under section 2 of Circuit Court Rule No. 23. *Board of Sup'rs of Chippewa Co.* v. *Bennett,* 185 Mich. 544, 563, and cases cited; *Hanley* v. *Gowan,* 202 Mich. 293; *Meeuwsen* v. *Clough & Warren Co.,* 207 Mich. 701. No notice whatever as to the

defense which would be interposed was given as to car No. 468. For the insufficiency and want of such notice, the case must be reversed.

2. In view of the probable amendment of the plea and notice on a new trial, we feel called upon to consider the claim of the defendant that he received the peaches under an agreement that he should not be required to pay the freight charges. The shipment was interstate, and the duty devolved on plaintiff to collect the freight charges. As a common carrier, it had a lien on the peaches and it could not legally permit this lien to be discharged without securing payment. Acceptance by defendant, who was on plaintiff's credit list, would, of course, be equivalent to payment. So that, if we consider only the bills of lading and the delivery of the peaches to defendant on his surrender of the same, a liability on his part to pay the freight charges would attach.

But this would not prevent the plaintiff and the defendant from entering into a new agreement with the consent of the consignor, the fruit company, whereby the plaintiff might deliver the peaches to the defendant, acting as agent for and on behalf of the consignor, and that plaintiff would look to the fruit company alone for the freight charges. While, in view of the Federal statute, an agreement to release the freight charges altogether would be invalid, we can see no reason why plaintiff might not agree to look to the consignor for such charges. To release the defendant, the burden would be on him to show that such an agreement was made with a person representing the plaintiff, having authority to make the same, and that the consignor consented thereto. Having stricken out the words "we pay" in the bill of lading, the fruit company had a right to expect that the plaintiff would not deliver the peaches without payment of the freight. There is no rule of law, however, which, on defend-

ant's refusing to accept the shipment, owing to its condition, would prevent the plaintiff from agreeing with the fruit company that it would look to it alone for the freight charges. The authority of plaintiff's employee, spoken of by the defendant as its cashier, was, we think, under the evidence in this record, a question for the jury. *McEachran* v. *Railway Co.*, 115 Mich. 318.

3. The testimony of the defendant as to certain telephonic conversations had with Mr. Gibson and the receipt in evidence of the telegram he claimed to have received from the fruit company were clearly inadmissible unless it appeared that such matters were communicated to the plaintiff and considered by it at the time the alleged new agreement was made.

The judgment is reversed, and a new trial ordered, with costs to plaintiff.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.