NEW YORK CENTRAL RAILROAD COMPANY, Plaintiff, *v.* FRANK E. MALONEY, Doing Business under the Name and Style of INTERNATIONAL COAL AND COKE COMPANY, Defendant.

County Court, Niagara County, July 31, 1930.

*Rann, Vaughan, Brown & Sturtevant* [*Selwyn R. Mack* of counsel], for the plaintiff.

*Cohn, Franchot, Runals & Robillard* [*Thomas J. Rickert* of counsel], for the defendant.

GOLD, J.   Plaintiff brought this action to recover a bill of freight charges due and owing for the transportation of three cars of bituminous coal.   Defendant does not dispute the propriety of the charges sued for but sets up a counterclaim for an amount equal to that sued for by the plaintiff.   The question of the counterclaim will, therefore, be considered.

Sometime previous to the movement of the cars mentioned in the complaint, two other cars were shipped from Cumberland Mines, Pennsylvania.   The shippers were " Moore Brothers Fuel Company account of Byrne Fuel Company."   They were consigned to Byrne Fuel Company at Buffalo, N. Y.   Upon arrival of the cars at Buffalo, Byrne Fuel Company furnished the carrier with written instructions to turn the cars over to the Lake Erie Fuel Company, Buffalo, N. Y.   Later on the same day the latter company furnished the carrier with written instructions to " deliver " the two cars to the defendant at Suspension Bridge, N. Y.   Upon arrival of the cars at the latter place the defendant instructed plaintiff to turn the cars over to the United States Light and Heat Corporation.   The latter instructions were verbal.   Pursuant to these instructions the cars were placed on the private siding of the latter corporation.

The said corporation thereafter notified plaintiff and defendant that it refused to accept the cars on account of inferior quality. Four days later plaintiff pulled the cars from said siding.   The contents of the cars were found to be a material which was absolutely unburnable and, after plaintiff's efforts to dispose of the cars had failed, the contents of the cars were finally dumped, they being absolutely worthless.

In the meantime the freight charges in connection with the two cars were included by plaintiff on a statement with other charges due to the plaintiff from the United States Light and Heat Corporation.   The said corporation without particular examination of this statement and without noticing or knowing that the charges on these refused cars were included, paid the entire amount of this statement to plaintiff.

Came a time later when moneys were owing from the United States Light and Heat Corporation to defendant and the said corporation deducted from these sums the amount of the charges

which it had paid to plaintiff by mistake on the two refused cars and duly assigned to defendant its said claim for repayment of the sum paid in error by said corporation to the plaintiff and the defendant became the owner and holder of said claim for repayment.

Defendant thereafter presented a claim to plaintiff for a refund of the charges on these two cars and the claim for refund was later declined by plaintiff.

Later, the three cars referred to in the complaint were delivered to defendant by plaintiff, and plaintiff rendered defendant a bill covering the freight charges thereon. Defendant deducted from this sum the amount of the freight charges on the two refused cars and gave a check to plaintiff for the difference.

Referring to the freight for the two rejected cars plaintiff contends that the defendant became the consignee when the Lake Erie Fuel Corporation directed the cars delivered to defendant. The words used were " Please deliver * * * to International Coal & Coke Company." It contends that it is immaterial what words were used in the diversion orders — " reconsigned to," " turn over to," " deliver to " or " divert to " so long as the wording actually designated the defendant as the person intended to receive delivery of the cars at destination.

All the acts of the defendant point to the fact that he was the consignee and that he so considered himself. What could have been the mental attitude of the defendant when the Lake Erie Fuel Corporation directed the cars delivered to him. He must have intended to receive them for himself for he immediately directed the plaintiff to place them on the siding of the United States Light and Heat Corporation. That the corporation and defendant had dealings together is evidenced by the fact that the agreed statement of facts states: " Came a time later when moneys were owing from the United States Light & Heat Corporation to defendant and the United States Light & Heat Corporation deducted from these sums the amount of the charges which it had paid to plaintiff by mistake on the two refused cars, and duly assigned to the defendant its said claim for repayment." He accepted the shipment and intended to and did deliver it to a customer. He thereupon became liable for the payment of the freight.

" Liability for freight charges of the following persons has been established: * * *; (2) a consignee, regardless of whether or not he is actual owner, and regardless of whether or not his character as agent is disclosed by the bill of lading or is communicated to the carrier, provided he accepts the shipment." ( *New York Central Railroad Company* v. *Sharp*, 124 Misc. 265.)

" But the consignee may also become liable for such charges by its own act. While no contractual relation arises between carrier and consignee by the mere designation of the latter as consignee, the consignee becomes liable for the freight charges when an obligation arises on his part from presumptive ownership, acceptance of the goods and the services rendered and the benefits conferred by the plaintiff for such charges." (*New York Central R. R. Co.* v. *Ross Lumber Co.*, 235 N. Y. 261.)

Inasmuch as the defendant became liable for the payment of the freight, the assignment from the United States Light and Heat Corporation to defendant avails nothing.

Let judgment be entered in favor of the plaintiff against the defendant in the sum of $325.32, with interest thereon from the 23d day of January, 1928, together with the costs and disbursements on this action.