NEW YORK CENTRAL RAILROAD CO. *v.* BROWN.

1. Carriers—Compensation.

Ordinarily a carrier has a right to look for his compensation to the person who required him to perform the service by causing the goods to be delivered to him for transportation.

2. Courts—Denial of Certiorari by Supreme Court of United
States.

Denial by the Supreme Court of the United States of a writ of
certiorari imports no expression of opinion upon the merits of
the case.

3. Carriers—Reconsignment.

One who receives or exercises dominion over goods by ordering
a reconsignment, in the absence of some further element of
fact which clearly destroys the presumption of ownership or
contract thereby established, is responsible for freight charges
accruing up to the time of such receipt or reconsignment
order.

4. Same—Acceptance of Freight as Owner—Implied Promise to
Pay Charges.

Where consignee who is designated as such in bill of lading and
who is presumptive owner of freight accepts freight in the
capacity of owner, the law implies a promise on its part to
pay the charges though it does not have possession of the bill
of lading and has no knowledge of its terms.

5. Same—Liability for Freight Charges—Reconsignment.

Action of consignor in directing carrier to collect freight charges
from consignee does not exonerate the consignor from lia-
bility for the freight and position of consignee, as recon-
signor, is analogous to that of original consignor so far as
liability for freight charges.

6. Same—Direction to Deliver Upon Payment of Freight
Charges.

Under uniform bill of lading the direction of a consignor or
reconsignor to the carrier to demand payment of freight
charges from person to whom it delivered the goods is not a
contractual one but merely gives the carrier an option to
demand payment from person to whom it delivers the goods.

7. Same—Freight Charges—Reconsignment.

Action of consignee in reconsigning three carloads of coal was
an act of dominion on its part creating liability upon it for
freight charges which was not discharged by extension of
credit to the reconsignee, subsequently declared a bankrupt.

Appeal from Wayne; Webster (Clyde I.), J.  Sub-
mitted June 11, 1937.  (Docket No. 79, Calendar
No. 39,365.)  Decided September 1, 1937.

Assumpsit by New York Central Railroad Company, a corporation, against Louis I. Brown and Harry G. Ward, Jr., individually and as copartners, doing business as Brown-Ward Company, for freight and demurrage charges. Judgment for defendants. Plaintiff appeals. Reversed.

*William A. Alfs* and *Kenneth F. Stone (John J. Danhof,* of counsel), for plaintiff.

*Havelock J. Northmore,* for defendants.

SHARPE, J. This cause involves a claim for freight and demurrage charges aggregating $507.68 on three carloads of coal. The finding of facts by the trial court is as follows:

"On February 18, 1932, the Pursglove Coal Mining Company delivered two carloads of coal, loaded in cars numbered PRR 178021 and NYC 432068 to the Monongahela Railroad Company at Pursglove Mine No. 2 located near Pursglove, West Virginia, and directed the carrier to transport said carloads to the Brown-Ward Company, at Detroit, Michigan, *via* the Pittsburgh & Lake Erie and New York Central and Michigan Central railroads. On the following day a third carload of coal loaded in car numbered PRR 729643, was delivered with the same shipping instructions. The shipping instructions were given by written mine tags to Conductor Sidwell of the Monongahela railroad, who accepted the cars for transportation and moved them from the mine. The original tags showed defendants as consignee and direct 'charge freight to consignee.' The Pittsburgh & Lake Erie Railroad Company issued a uniform freight bill of lading on each car.

"On February 19, 1932, while the cars were in transit, defendants directed plaintiff to divert cars numbered PRR 178021 and NYC 432068 to A. F. Weast to order. On the same day A. F. Weast directed plaintiff to deliver the cars on arrival to

Holmes Coal Company. The same instructions were given on February 23, 1932 for delivering the car numbered PRR 729634. These orders were given by telephone to clerks Jones and Payne and were confirmed in writing.

"Defendants' orders specified: 'Through rate only to apply. If these instructions cannot be followed, advise us, as we will not be responsible for any excess charges or combination of local rates.'

"The carloads were delivered to the Holmes Coal Company on their private siding in Detroit, Michigan. Car numbered PRR 178021 was placed February 24th and unloaded February 25th. Car numbered NYC 432068 was placed February 24th and unloaded February 27th. Car numbered PRR 729634 was placed February 25th and unloaded March 1st.

"At the time the Brown-Ward Company, defendants herein, reconsigned said cars to Weast and when the said Weast reconsigned the said cars to the said Holmes Coal Company at Detroit, Michigan, the formal reconsigning orders, both parties particularly specified 'charges to follow.'

"The Holmes Coal Company was an assumed firm name. The proprietor, Russell DuPuis, was on the plaintiff's credit list. The carloads of coal were placed on the Holmes Coal Company's siding, and were unloaded without the charges being collected.

"About two weeks after delivery, Russell DuPuis was adjudicated a bankrupt. Plaintiff's claim for these charges was allowed as a general claim against his estate, but no dividends were available for general creditors when his estate was closed. No portion of the freight charges were collected from the Holmes Coal Company, and plaintiff now seeks to collect them from defendants. The legal charges on the three carloads of coal, under tariffs filed with the Interstate Commerce Commission total $507.68, being based on a through rate of $2.60 per ton from point of origin to destination."

The trial court found in favor of defendants. Plaintiff appeals and contends that the owner and consignee of shipments of freight, moving in interstate commerce by rail, who reconsigns the shipments at destination to a third person with directions "charges follow" is liable for the published tariff charge accruing on the shipments.

It appears that this cause is one of first impression in Michigan. In 4 R. C. L. p. 857, cited in *Pennsylvania Railroad Co. v. Marcelletti,* 256 Mich. 411 (78 A. L. R. 923), it is said:

"Ordinarily a carrier has a right to look for his compensation to the person who required him to perform the service by causing the goods to be delivered to him for transportation, and that person is generally of course the shipper named in the bill of lading, or the consignor."

Defendants contend that where shipments are reconsigned, the carrier makes a definite contract to collect from the reconsignee and may not therefore collect from the original consignee; and rely upon *Chesapeake & Ohio R. Co. v. Southern Coal, Coke & Mining Co.,* 254 Ill. App. 238 and *Wabash Railway Co. v. Bloomgarden,* 212 Mich. 410. The Illinois case, *supra,* is cited as representing the decisions of both the Supreme Court of Illinois and the Supreme Court of the United States because each court denied a writ of certiorari. In *United States v. Carver,* 260 U. S. 482 (43 Sup. Ct. 181), the court said, "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." The Michigan case, *supra,* was a suit for freight charges against a reconsignee who unloaded two carloads of peaches and claimed that he did so as agent for the shipper under circumstances which were known to the carrier and

to which the carrier assented. This case did not involve the liability of a reconsignor and in our opinion is not controlling in the case at bar.

The general rule appears to be that one who receives or exercises dominion over goods by ordering a reconsignment, in the absence of some further element of fact which clearly destroys the presumption of ownership or contract thereby established, is responsible for freight charges accruing up to the time of such receipt or reconsignment order. See 105 A. L. R. 1216 and cases cited therein. But, what may one who directs a reconsignment do to relieve himself from freight charges? The leading case upon this subject is *New York Central R. Co.* v. *Warren Ross Lumber Co.,* 234 N. Y. 261 (137 N. E. 324, 24 A. L. R. 1160). In that case a car of lumber originating in Michigan was consigned to defendant at Boston. Before the car arrived at Boston defendant instructed the railroad company to deliver it to the Schieck-Johnson Company of that city "upon payment of freight charges." The carrier complied with the reconsigning instructions and delivered the shipment to the Schieck-Johnson Company without collecting charges. The Schieck-Johnson Company became bankrupt, and the plaintiff carrier brought suit for the unpaid charges against the defendant as reconsignor. Judge Pound, speaking for the court, said:

"As to plaintiff, defendant stood in the relation of owner of the carload of lumber. The bill of lading designated it as consignee. That fact is in itself evidence of ownership. It does not appear from the agreed facts that plaintiff had knowledge or notice that defendant was not the owner, or that defendant was not in fact such owner. The Schieck-Johnson Company might, for all that appears, have been the agent of defendant whose duty it was to take de-

livery on its behalf. As defendant was the presumptive owner, if it accepted the freight in the capacity of owner, the law implied a promise on its part to pay the charges (*Pittsburgh, C., C., & St. L. R. Co.* v. *Fink,* 250 U. S. 577 [40 Sup. Ct. 27]), although the bill of lading did not come into its possession and it had no knowledge of its terms (*New York Central & H. R. R. Co.* v. *York & Whitney Co.,* 256 U. S. 406 [41 Sup. Ct. 509]). When it wrote the letter directing the delivery without notifying the plaintiff that it was not the owner of the goods, it acted either as consignee or volunteer. We may not assume that its letter was the act of a meddler. We must, therefore, presume that it wrote as consignee. It follows that it accepted the goods by an act of ownership when it exercised dominion over them by giving directions for their delivery and the plaintiff was justified in treating it as owner of the goods. (*Pennsylvania R. Co.* v. *Titus,* 216 N. Y. 17 [109 N. E. 857, L. R. A. 1916 E, 1127, Ann. Cas. 1917 C, 862]). It thereby entered into the contract expressed in the bill of lading to pay the charges and become liable to pay such charges unless the words 'deliver * * * *upon payment of freight charges*' discharged its liability when the carrier neglected to collect on delivery to the Schieck-Johnson Company.

"The liability of the consignee under these conditions is analogous to the liability of the consignor under the terms of the bill of lading that the consignee shall pay the freight. Such a direction does not exonerate the consignor from liability. The directions given by defendant neither modified the implied contract between carrier and consignee whereby the consignee assumed liability for freight charges, nor amounted to an offer to accept the goods only on condition that freight charges should be collected of the Schieck-Johnson Company. Doubtless plaintiff might have refused to deliver to the Schieck-Johnson Company and retained the goods until its lien was satisfied by the payment of

the freight. Doubtless defendant by its instructions recognized such right when it qualified its directions as to delivery. But the directions were for the benefit of the carrier, not for the benefit of the defendant. The carrier was not bound at its peril to enforce payment of freight from the Schieck-Johnson Company and its right to resort to the defendant under the contract was not impaired by delivery of the freight under its direction. The language used in defendant's letter was not contractual. Its effect was merely to give plaintiff an option to demand payment from the person to whom it delivered the goods.''

See, also, *Pennsylvania R. Co.* v. *Lord & Spencer, Inc.,* — Mass. — (3 N. E. [2d] 231, 105 A. L. R. 1211); *New York Central R. Co.* v. *Satuloff,* 122 Misc. 119 (202 N. Y. Supp. 297); *New York Central R. Co.* v. *Maloney,* 137 Misc. 751 (244 N. Y. Supp. 394); *Dare* v. *Railroad Co.* (C. C. A.), 20 Fed. (2d) 379; *West Jersey & Seashore R. Co.* v. *Whiting Lumber Co.,* 71 Pa. Super. Ct. 161; *Delaware, L. & W. R. Co.* v. *Andrews Brothers Co., Inc.,* 90 Pa. Super. Ct. 574; *Indiana Harbor B. R. Co.* v. *Lieberman,* 245 Ill. App. 503; *Mellon* v. *Landeck,* 248 Ill. App. 353; *New York Central R. Co.* v. *Platt & Brahm Coal Co.,* 236 Ill. App. 150; *C. L. Hils Co.* v. *Railroad Co.,* 28 Ohio App. 459 (162 N. E. 761); *S. A. Gerrard Co.* v. *Railway Co.,* 39 Ohio App. 84 (176 N. E. 126); *Central R. Co. of New Jersey* v. *National Asbestos Manfg. Co.* (N. J. Sup.), 127 Atl. 184.

We think that the act of dominion upon the part of defendants in ordering reshipment created a liability upon them and the same was not discharged by the extension of credit to the Holmes Coal Company.

The judgment of the trial court is reversed and a judgment may be entered in the circuit court in

favor of plaintiff for the sum of $507.68 and interest. Plaintiff may recover costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, POTTER, and CHANDLER, JJ., concurred.