McBRIDE, Judge.
Plaintiff, a motor freight carrier, sued defendant (the consignee) for freight charges amounting to $287.70 due on a shipment of 2S0 cartons of merchandise from Hollywood, California, to defendant in New Orleans; plaintiff had been unsuccessful in its attempt to collect from the consignor which had gone out of business; this appeal was taken by plaintiff from a judgment dismissing the suit.
H. C. Jacoby Company of Hollywood, California, was the consignor; the bill of lading shows “collect” freight charges in the amount sued for. The following facts, borne out by the record, are taken from appellee’s brief, viz: On October 30, 1962, the shipment was delivered to the New Orleans News Company Division of The American News Company at 1111 So. Peters Street in the City of New Orleans under a bill of lading marked “collect”. At the time of the delivery, the manager of New Orleans News Company, Mr. William J. Splawn, advised the delivery man that the shipment was ordered “freight prepaid” and that the company had no intention of paying the freight charges. Thereupon, the driver phoned his office and then advised Mr. Splawn that he was instructed to leave the shipment without collecting payment from New Orleans News Company. The very purpose of the phone call by the driver was to advise his superiors that New Orleans News Company had no intention of paying the freight bill either at the time of delivery or at any other time and the shipment was left with this specific understanding. The following day defendant formally notified plaintiff’s California office in writing of its disavowal of responsibility for the freight charges on the ground that the consignor should have prepaid same. The merchandise had been consigned to defendant which was to sell same and remit the proceeds within six months to consignor. The evidence is that defendant subsequently sold some of the merchandise, remitted therefor, and returned the unsold goods. It cannot be gainsaid that defendant’s actions constitute an acceptance of delivery of the shipment.
The sole defense to the suit interposed by defendant appears in these allegations *121 in its answer: “ * * * the said delivery man left the aforesaid shipment at The New Orleans News division of The American News Company at 1111 So. Peters Street in the City of New Orleans and gave your defendant to understand that the freight charges would be collected by the freight forwarder or shipping company from the shipper, H. C. Jacoby Company. * * * That the said Pacific & Atlantic Shippers, Inc., plaintiff herein, is estopped from making claim against defendant; * * *”
The Interstate Commerce Act sets forth this injunction:
“No carrier by railroad and no express company subject to the provisions of this chapter shall deliver or relinquish possession at destination of any freight or express shipment transported by it until all tariff rates and charges thereon have been paid, * * * ” [49 U.S.C.A. § 3(2)]
It is well settled that if the consignee accept a shipment, by virtue of his presumed ownership, he becomes liable as a matter of law for the full amount of freight charges. 9 Am.Jur., Carriers, § 624, pp. 794-5; 13 C.J.S. Carriers § 316, p. 755; Louisville & N. R. Co. v. United States, 267 U.S. 395, 45 S.Ct. 233, 69 L.Ed. 678; Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900; Pittsburgh C., C. & St. L. R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151; Aero Mayflower Transit Company v. Rae, 203 Misc. 801, 118 N.Y.S.2d 895; Southern Pac. Co. v. Wheaton Brass Works, 5 N.J. 594, 76 A.2d 890, (Cert.Den., 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343); Acme Fast Freight, Inc. v. Heffler, 197 Pa.Super. 633, 180 A.2d 110; Northwestern Pacific Railroad Company v. Burchwell Co., Inc., 349 F.2d 497 (5th Cir.); Great Northern Ry. Co. v. Hyder, 9 Cir., 279 F. 783; New York Cent. R. Co. v. Frank H. Buck Co., 2 Cal.2d 384, 41 P.2d 547; Aero Mayflower Transit Co. v. Hankey, La.App., 148 So.2d 465, (decided by this Court).
It is stated in 13 C.J.S. Carriers § 316, p. 755:
“Due to the Interstate Commerce Act and similar state statutes imposing an absolute duty on the carrier to collect the full amount of the lawful or established charges, * * * many cases have held that the consignee becomes liable for the full amount of the charges which the carrier is required by law to collect notwithstanding the consignee would not have accepted or exercised dominion over the shipment but for a representation that the charges had been prepaid, or a mistaken understanding or belief that the charges demanded by, and paid to, the carrier at the time of the acceptance or delivery constituted the full amount of the charges that could and would be collected or demanded; and this is so although the carrier has delayed seeking to enforce the liability of the consignee until after the consignor who has agreed to pay the charges has become insolvent.”
In Western & Atlantic R. Co. v. Underwood, (5 U.S. Cir. Ct. of Appeals) 281 F. 891, the Court said:
“That the consignee cannot accept delivery without incurring liability for the carrier’s charges, known or unknown, supposed to be prepaid or otherwise, and no matter what the consignee’s actual relation to the shipper is, appears a harsh rule, but is seemingly established by authority. If by the shipper’s omission the consignee is thus made liable for a charge which as between him and the shipper should not be borne by him, his recourse is on the shipper. The carrier is not bound by their private rights in the transaction, whether known or unknown to it, nor by any mistake or misrepresentation occurring, but under the law may look to the shipper as the original contractor to pay and to the person who as consignee accepts the goods and becomes by statute liable to *122 discharge the lien thereon until the lawful charges are satisfied.”
In connection with its plea of estoppel defendant points out that, within a period of two years after the delivery, it had no word whether plaintiff had been successful in collecting the freight charges from the consignor, and it is contended that defendant was lulled into a sense of false security and deprived of the opportunity of deducting the freight charges from the proceeds of the sales before remittance to the consignor.
The defense of estoppel is unavailing to defendant. The carrier cannot, as a general rule, estop himself from enforcing liability on the part of the consignee. New York Central & H.R.R. Co. v. York & Whitney Co., 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016.
In Boston & Maine R.R. v. Hannaford Bros. Co., 144 Me. 306, 68 A.2d 1, it was held that the carrier’s failure to report to defendant for more than a year on the progress of its efforts to collect from the consignee transportation charges on interstate shipment delivered to and accepted by defendant without notice to the carrier that it was an agent only of the consignee without beneficial title to the property did not estop the carrier from enforcing defendant’s liability for transportation charges.
The obligation to pay the legal sum due for freight charges arises under an inflexible rule of law and is not released by equitable considerations. Acme Fast Freight, Inc. v. Heffler, supra.
Moreover, if it were possible for the consignee to rely on a waiver by an employee of the carrier of the requirement that freight should be paid before delivery, it would be incumbent on him to show that the employee had authority to make the waiver. See McEachran v. Grand Trunk Ry. Co., 115 Mich. 318, 73 N.W. 231.
The trial judge was clearly in error in absolving the consignee of its statutory responsibility for the freight charges.
Therefore, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of plaintiff and against defendant for the full sum of $287.-70, with legal interest thereon from judicial demand until paid and for all costs of both Courts.
Reversed and rendered.