# STATE OF MICHIGAN

# COURT OF APPEALS

LANDSTAR EXPRESS AMERICA, INC.,

        Plaintiff-Appellant,

v

NEXTEER AUTOMOTIVE CORPORATION and
STEERINGMEX S,

        Defendants-Appellees.

FOR PUBLICATION
March 30, 2017
9:00 a.m.

No. 328334
Oakland Circuit Court
LC No. 14-142001-CK

Before: STEPHENS, P.J., and SAAD and METER, JJ.

SAAD, J.

Plaintiff appeals the trial court's order that granted summary disposition in favor of defendants. We affirm.

## I. NATURE OF THE CASE

Plaintiff sued defendants for $5 million for its delivery of automotive parts to defendants notwithstanding that plaintiff delivered the parts at the request of and by way of contract with nonparty Contech. Indeed, in the contract between Contech and plaintiff, Contech agreed to pay plaintiff for these shipments, which was consistent with Contech's express contractual obligation to defendants to make on-time delivery of said parts and to pay for premium shipments if it could not comply with its on-time delivery commitments to defendants. At no time, did defendants contract with plaintiff or promise to pay plaintiff for these shipments. In fact, prior to this suit, plaintiff never claimed that it looked to defendants for payments of these shipping fees.

To underscore this last point, when Contech failed to pay plaintiff, plaintiff rightfully sued Contech for breach of contract in federal court, not defendants, for the failure to pay the shipping costs. At the federal district court, plaintiff opposed Contech's effort to bring defendants into the suit and instead asserted that it was Contech, and not defendants, that was responsible in contract to pay plaintiff. Yet, when plaintiff could not recover $5 million of its $6 million judgment against Contech, then plaintiff, changed targets and sued defendants in state court on an implied contract theory—that by accepting delivery of the automobile parts, defendants agreed to pay plaintiff.

In other words, plaintiff asks this court to imply and impose a contractual obligation upon defendants to pay $5 million to plaintiff, notwithstanding that (1) Contech had an express

-1-

contract with plaintiff to pay for these shipments, (2) Contech was contractually obliged to defendants to pay for these shipments, (3) plaintiff admitted in federal court that Contech, not defendants, was responsible for these shipments, and (4) defendants never agreed or promised to pay plaintiff for these shipments.

We agree with the trial court that Michigan contract law governs this case and that Contech, not defendants, contracted to pay for these shipments. Furthermore, we will not imply a contractual obligation upon defendants which contradicts the stated position of plaintiff in federal court and also contradicts the express contractual arrangements between Contech and defendants and between Contech and plaintiff, both of which govern these shipments.

Plaintiff also claims that defendants should be obliged to pay plaintiff because defendants were unjustly enriched by plaintiff's delivery of the automobile parts. We reject this theory for the simple reason that defendants were not unjustly or unfairly enriched. To the contrary, by virtue of its contract with Contech, defendants were entitled to on-time delivery of parts and to Contech's payment of the expedited shipments. In other words, defendants received simply what it contracted for, no more, no less.

For these reasons, and pursuant to the law explained below, we affirm the trial court's dismissal of plaintiff's suit against defendants.

## II. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff is a transportation and logistics company that arranges various services for its customers, including expedited air transportation. Defendants, Nexteer and SteeringMex, manufacture automobile steering assemblies and supply them to Ford and General Motors. Defendants have multiple plants, including plants in Michigan. At all times relevant to this appeal, nonparty Contech supplied certain casting parts to defendants for these steering systems. The parts were manufactured in Contech's facility in Clarksville, Tennessee and delivered to defendants' plants.

Defendants' contract with Contech provided that if Contech failed to have goods ready in time to meet defendants' delivery deadlines, it was Contech's responsibility to pay for premium shipments. In June 2011, Contech began having difficulty keeping up with defendants' demand for parts and started to fall behind schedule. In order to deliver the parts on time, Contech arranged for plaintiff to expedite the shipments to defendants and agreed to pay plaintiff for its services. The expedited air shipments at issue occurred between April 14, 2011, and November 15, 2011, which resulted in Contech owing more than $5 million to plaintiff.

Contech did not pay plaintiff, and in January 2013, plaintiff obtained a judgment in federal district court for $5,995,510.44 against Contech, based on the breach of express contracts. Notably, at the federal district court, Contech attempted to bring defendants into the

suit, but plaintiff opposed the effort.[1] Plaintiff was able to collect only $1.1 million from Contech.

In order to recover the remaining $5 million, plaintiff filed the instant lawsuit against defendants and brought claims of breach of contract and unjust enrichment. Plaintiff alleged that an implied contract for payment existed with defendants upon their acceptance of goods from the carrier pursuant to common-law consignee liability. Alternatively, plaintiff alleged that it would be inequitable for defendants to demand and orchestrate the expedited shipping and to receive the benefit of the transportation services without compensating plaintiff.

Plaintiff and defendants filed competing motions for summary disposition under MCR 2.116(C)(10). The trial court ruled that there were no material questions of fact in dispute and that defendants were entitled to summary disposition as a matter of law. The trial court dismissed plaintiff's breach of contract claim, finding that a consignee's acceptance of an air shipment alone no longer creates an express or implied obligation to pay the shipment costs. Instead, the court noted that the question of liability for air freight costs is a matter of contract. The trial court concluded that the evidence established that Contech "secured and contractually agreed" to pay plaintiff's shipping costs. The trial court also dismissed plaintiff's unjust enrichment claim. It found that Contech, not defendants, received the "primary benefit" of plaintiff's shipment services because the services allowed Contech to satisfy its contractual duties to timely deliver parts to defendants. It further found that defendants did not receive benefits from plaintiff's shipping services other than those already considered in the agreement with its supplier. The trial court concluded that, although Contech's performance of its contractual duties benefited defendants, this could not form the basis of a benefit conferred by plaintiff to satisfy the definition of an unjust enrichment claim.

Accordingly, the trial court granted defendants' motion for summary disposition and denied plaintiff's motion for summary disposition. This appeal follows.

### III. STANDARD OF REVIEW

On appeal, we review a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(10) de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the

---

[1] Specifically, at the federal district court, plaintiff stated in its brief opposing Contech's motion for leave to file a third-party complaint against Nexteer,

> Landstar did not intend for Nexteer to remit payment for services ordered by Contech. Indeed, Landstar continuously billed Contech for its services and discussed costs of those services with Contech, not Nexteer. Contech cannot show that Landstar ever consented to any agreement to be paid by Nexteer when its contract for services, implied or otherwise, was with Contech. [Citation omitted.]

light most favorable to the nonmoving party, *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and all reasonable inferences are to be drawn in favor of the nonmoving party, *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). Summary disposition is proper if the evidence fails to establish a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*. In addition, issues of contract interpretation are questions of law that this Court reviews de novo. *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004).

## IV. BREACH OF CONTRACT CLAIM

Plaintiff contends that the trial court erroneously dismissed its action because there remains a material dispute regarding whether defendants, the consignees, were liable for unpaid air freight costs by operation of law because they accepted delivery of the shipments. We disagree.

The Michigan Supreme Court has indicated that liability in such shipping matters ordinarily is a matter of contract because it lies against "the person who required [the carrier] to perform the service." *Penn R Co v Marcelletti*, 256 Mich 411, 414; 240 NW 4 (1932). The *Marcelletti* Court noted that, while the consignor normally is responsible for such costs, if the parties intend, they can "[u]ndoubtedly" alter this arrangement so the consignor has no liability for shipment costs. *Id.*; see also *Louisville & Nashville RR Co v Central Iron & Coal Co*, 265 US 59, 66; 44 S Ct 441; 68 L Ed 900 (1924) (stating that parties "were left free to contract" on matters not addressed by rule or law). The Michigan Supreme Court case *New York Central R Co v Brown*, 281 Mich 74; 274 NW 715 (1937), also is instructive. In *Brown*, the Court noted that by accepting the shipment and exercising dominion over it, the consignee "entered into the contract expressed in the bill of lading." *Id.* at 80. And because the contract indicated that the defendant was the "consignee" and that the freight was to be charged to the consignee, the defendant could not escape liability. *Id.* at 76, 80. Thus, the terms of the contract were key in the *Brown* Court's analysis.

Here, for each of the expedited air shipments at issue, Contech contracted with plaintiff. No defendant was a party to those particular contracts. Under the express terms of the contracts, Contech, not defendants, requested the shipments and was obligated to pay the freight charges. Further, nearly all of the bills of lading were marked "pre-paid," and the invoices identified Contech as the "Bill to" party. These facts again show that defendants were not liable for any shipping costs. Indeed, plaintiff has conceded in federal district court that (1) its contracts with Contech reflect that Contech is responsible for the shipping charges and (2) plaintiff always intended for Contech to pay the shipping charges. Further, in the contract between Contech and defendants, Contech agreed that it would be responsible for freight charges associated with it supplying parts to defendants. As a result, it is unmistakable that based on contract law,

-4-

defendants cannot be held liable for the freight charges at issue, and the trial court properly granted defendants' motion for summary disposition.[2]

Nevertheless, while plaintiff acknowledges that there was no express contract between it and defendants, plaintiff claims that defendants are liable under an implied contract theory. Specifically, plaintiff relies on the application of the doctrine of "consignee liability."[3] We reject this attempt to impose an implied contract when the subject matter clearly is governed by express contracts.

Our Court has held that "a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). Plaintiff contends that this principle of law does not apply in this instance because there is no express contract between it and defendants. It is true that "[g]enerally, an implied contract may not be found if there is an express contract *between the same parties* on the same subject matter." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194; 729 NW2d 898 (2006) (emphasis in *Morris Pumps*; quotation marks and citation omitted). However,

---

[2] On the basis of this conclusion, the facts that plaintiff relies on to show that defendants arguably had a greater role than merely being recipients of the shipments do not alter the analysis regarding the parties' intent.

[3] Regarding this doctrine, plaintiff primarily relies on the three early United States Supreme Court cases *Pittsburgh, Cincinnati, Chicago & St Louis Ry Co v Fink*, 250 US 577, 581; 40 S Ct 27; 63 L Ed 1151 (1919); *New York Cent & Hudson River RR Co v York & Whitney Co*, 256 US 406, 408; 41 S Ct 509; 65 L Ed 1016 (1921); and *Central Iron*, 265 US 59. In *Fink*, the Court stated that "the consignee is prima facie liable for the payment of the freight charges when he accepts the goods from the carrier." *Fink*, 250 US at 581. However, we agree with the North Dakota Supreme Court, where it stated that "*Fink* and *York & Whitney* do not hold that the common law presumptions, as distinguished from the statutory filed rate doctrine, cannot be altered by contract." *EW Wylie Corp v Menard, Inc*, 523 NW2d 395, 398 (ND, 1994). Instead,

> *Fink* and *York & Whitney* better illustrate the "filed rate doctrine" than any common law rule. Simply put, the filed rate doctrine, deeply lodged in the complex history and turgid language of the Interstate Commerce Act, dictates that the rate a common carrier duly files with the Interstate Commerce Commission (ICC) is the only lawful rate it can charge for its services, and that deviation from the filed rated is not permitted under any pretext. [*Id.*]

Further, plaintiff's reliance on *Central Iron* also is misplaced. In *Central Iron*, the Supreme Court noted that parties "were left free to contract" on matters not addressed by the tariff filed with the ICC. *Central Iron*, 265 US at 66. Hence, because "[t]he tariff did not provide when or by whom the payment should be made," the Court looked to the contractual terms in the bills of lading to determine whether the consignee was responsible for the uncollected portion of the legally mandated tariff. *Id.* at 67. As such, "*Central Iron* clarifies that contract law ordinarily determines who is liable for payment of freight charges under the common law." *Wylie*, 523 NW2d at 399.

the *Morris Pumps* Court qualified that "generally" the same parties need to have an express contract on the same subject matter—it is not an absolute requirement.

In *Morris Pumps*, the City of Detroit contracted with a general contractor to construct a wastewater treatment facility. *Id.* at 190. The general contractor then subcontracted with Centerline Piping to complete the mechanical portion of the contract. *Id.* Centerline, in turn, contracted with several materials suppliers for equipment and supplies. *Id.* The suppliers provided the various contracted-for goods to the site, but Centerline abandoned the project, went out of business, and did not pay the suppliers. *Id.* The general contractor retained a new subcontractor to finish the project. *Id.* at 190-191. The new subcontractor used the materials provided by the suppliers but did not pay the suppliers for the goods. *Id.* at 191. The suppliers sought recovery from the general contractor on an implied contract/unjust enrichment theory. *Id.*

The defendant general contractor in *Morris Pumps* argued that no contract could be implied because of the existence of express contracts between the plaintiffs and Centerline. The Court rejected this argument and stated,

> [W]e recognize that there existed express contracts between plaintiffs and Centerline, all of which concerned the subject matter at issue here. Thus, we agree with defendant that *there were express contracts covering the same subject matter*. However, *defendant was not a party to any of these express contracts*. Therefore, the contracts did not exist between the same parties. Because there were no express contracts between the same parties on the same subject matter, defendant's argument with respect to this issue must fail. The mere existence of the express contracts between plaintiffs and Centerline does not bar recovery from defendant . . . . [*Id.* at 194-195 (emphasis altered; citation omitted).]

While plaintiff, here, directs our attention to the *Morris Pump* Court's reliance on the fact that there was no contract between the plaintiff and the defendant, we think that this aspect alone is not controlling. Indeed, the *Morris Pump* Court also noted how there were "express contracts covering the same subject matter" but that the defendant "was not a party to *any* of these express contracts." *Id.* (emphasis added). Unlike *Morris Pumps*, defendants here were parties to express contracts related to the subject matter, i.e., the expedited shipping. In addition to the contracts between Contech and plaintiff, where Contech and plaintiff agreed that Contech was responsible for the shipping costs, the contract between defendants and Contech also provided that Contech was responsible for the expedited shipping costs for the automotive parts—not defendants. In sum, while there was no contract between plaintiff and defendants directly, the fact that defendant contracted with Contech and Contech, in turn, contracted with plaintiff—with all contracts specifically and consistently providing that Contech is the party responsible for shipping costs—is sufficient to preclude the imposition of any implied contract to the contrary.

Accordingly, we reject plaintiff's attempt to impose liability on defendants through an amorphous "consignee liability" theory when, based on Michigan contract law, the obligation for the shipping costs falls squarely to Contech. Absent any clear law that that unquestionably preempts Michigan law, Michigan contact law applies and governs our decision. Therefore, we agree with the "prevailing view" that "the parties involved in the transportation arrangement are free to contract among themselves as to the liability for the freight charges and this includes a

carrier agreeing not to look to the consignee for payment—at least absent a federal statute or regulation to the contrary." *Western Home Transport, Inc v Hexco, LLC*, 28 F Supp 3d 959, 969-970 (D ND, 2014). Only absent the clear intent of the parties, would any common-law presumptions or defaults of liability apply. See *Wylie*, 523 NW2d at 399.

## V. UNJUST ENRICHMENT CLAIM

Plaintiff asserts that the trial court erroneously dismissed its claim of unjust enrichment because there remains a material dispute regarding whether defendants were unjustly enriched by plaintiff's expedited air shipments. We disagree.

An equitable claim of unjust enrichment is grounded on the theory that the law will imply a contract to prevent the unjust enrichment of another party. *Belle Isle Grill Corp*, 256 Mich App at 478. However, as we have already determined, plaintiff cannot imply a contract with defendants under the present circumstances. Therefore, defendants were entitled to summary disposition on this claim of unjust enrichment as well.

Regardless, a review of the underlying merits of plaintiff's claim of unjust enrichment also requires dismissal of that claim. A claim alleging unjust enrichment requires that a plaintiff establish "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps*, 273 Mich App at 195. "[T]he law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Id*. However, not all enrichment is necessarily unjust. *Karaus v Bank of New York Mellon*, 300 Mich App 9, 23; 831 NW2d 897 (2012). "[T]he key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." *Id*. Further,

> "the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person." [*Morris Pumps*, 273 Mich App at 196, quoting 66 Am Jur 2d, Restitution and Implied Contracts, § 32, p 628.]

We hold that plaintiff cannot demonstrate how any benefit that defendants received was "unjust." As already discussed, the evidence clearly shows that Contech contracted with plaintiff for the shipments at issue. In those contracts, Contech was responsible for the payment of those requested services. Likewise, the contract between defendants and Contech shows that Contech was responsible for expedited freight charges. Accordingly, the benefit defendants received— the timely delivery of steering assembly parts—was nothing more than what all the parties contemplated. Further, all the parties contemplated that Contech—not defendants—would be responsible for the shipping charges. As a result, we agree with the trial court that it cannot be said that defendant's failure to pay for the shipments was unjust.

While plaintiff certainly was deprived of the money it was due for fulfilling its obligation to ship the parts, that duty to pay fell to Contech, not defendants. To rule that defendants now should pay for Contech's debts would work an injustice against defendants which had a contract right to have Contech pay for these costs. Of course, Contech is the party who is primarily responsible for plaintiff's difficult position. Contech retained the benefit provided by plaintiff because Contech was able to meet its contractual duty to defendants while not meeting its contractual obligation to pay plaintiff for the shipping services. But we would be remiss if we did not note that plaintiff was in the best position to protect itself from being saddled with a high amount of unpaid bills because it could have refused to provide further shipping services for Contech long before Contech's debt reached $5 million. Indeed, the record reflects that plaintiff initially extended Contech a credit limit of $5,000 and was advised by its own credit department to extend no further credit but, for reasons that are not fully clear, disregarded that limit in due course, eventually allowing the amount of money Contech owed to climb to approximately $5 million.

Affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Henry William Saad
/s/ Cynthia D. Stephens
/s/ Patrick M. Meter