## PENNSYLVANIA R. CO. v. MISTROT.

### No. 2170.

Court of Appeal of Louisiana. First Circuit.
Dec. 12, 1940.

Rehearing Denied Jan. 14, 1941.

Writ of Error Refused March 3, 1941.

Dubuisson & Dubuisson, of Opelousas, for appellant.

L. Austin Fontenot, of Opelousas, for appellee.

OTT, Judge.

In April, 1934, the defendant shipped two cars of cabbage from Arnaudville, St. Landry Parish, consigned to P. G. Sackenreuther, advise Tom Ayoob Company, Pittsburg, Pennsylvania. Bills of lading were issued by the initial carrier for these two cars, on the back of which bills of lading is printed in small type a provision to the effect that, "The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor * * * shall not be liable for such charges." On the face of the bill of lading is printed in plain type a provision to the effect that if the shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: "The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges." This provision was not signed by the consignor.

On April 30, 1934, the consignee, Sackenreuther, wrote two letters to the agent of the plaintiff railroad company at Pittsburg, identical in form, except as to the car initials and numbers, as follows:

"On surrender of this letter and payment of freight charges, please deliver to Tom Ayoob Company, or bearer, (car initial and number) cabbage shipped from Arnaud-

ville, Louisiana, by P. Mistrot and billed to P. G. Sackenreuther, advise Tom Ayoob Company on arrival."

The railroad company accepted these instructions from the consignee, Sackenreuther, and delivered the two cars of cabbage to the Ayoob Company. The freight on these cars amounted to $571.53, and it is alleged in the petition that the railroad company accepted in payment of the freight two checks of the Ayoob Company, both of which checks were dishonored by the bank and have never been paid. This suit was filed against Mistrot in October, 1936, for the freight on these two cars on the ground that as the original consignor he is liable therefor under the terms of the bill of lading above mentioned.

The defendant filed an exception of no cause or right of action which was referred to the merits by the court. Defendant then filed answer, admitting that he shipped the two cars of cabbage, but averred that he shipped the cabbage for Sackenreuther, a produce merchant of Houston, Texas, who was the owner; that he (defendant) had no interest in the cabbage except to deliver them to the railroad company, and that the agent of the railroad company knew these facts when the bills of lading were issued.

The defendant, for lack of information, denied that plaintiff received the checks from Ayoob Company for the freight, and alleges that the railroad company should not have taken these checks for the freight; that in taking these checks it did so at its own risk, and having delivered the shipment to the Ayoob Company on the order of Sackenreuther, if the plaintiff has any claim for nonpayment of the checks, it should proceed against Tom Ayoob Company or Sackenreuther and not against defendant; that he knows of no reason why said checks were not paid; that it was almost a year after the freight was delivered before any demand was made on him, and that it was negligence on the part of the railroad company to deliver the shipment without collecting the freight.

Plaintiff asked for a judgment on the face of the pleadings, but this motion was denied. The case was tried and resulted in a judgment in favor of the defendant, dismissing the suit. The plaintiff has appealed.

The contention of the plaintiff railroad is that, as the defendant did not sign the provision in the bill of lading requiring the carrier to look to the consignee and not the shipper for payment of the freight, the defendant as consignor became primarily bound for the payment of the freight charges, and the railroad was under no obligation to collect the freight from either Sackenreuther or the Ayoob Company, and its failure to do so could have no effect on the primary liability of the defendant as shipper for the payment of these freight charges. Three principal cases in support of this contention are cited by counsel for plaintiff; namely, New York Central R. Co. v. Frank H. Buck Company, 2 Cal.2d 384, 41 P.2d 547; Portland Flouring Mills Company v. British & Foreign Marine Ins. Company, Ltd., 9 Cir., 130 F. 860; Pennsylvania R. Co. v. Marcelletti, 256 Mich. 411, 240 N.W. 4, 78 A.L.R. 923.

We have given careful consideration to these cases and several others involving the same question cited in the footnotes of 13 C.J.S., Carriers, § 316a, b and c, pages 744 to 757 and 9 Am.Jur., Carriers, §§ 621–624, pp. 791 to 796. Out of the rather involved and sometimes conflicting adjudications on this point, we are impressed with the following statement of the law in 9 Am. Jur., Carriers, § 622: "Ordinarily, in the absence of any provision or stipulation to the contrary, a carrier has a right to look for his compensation to the person who required him to perform the service by causing the goods to be delivered to him for transportation, and that person is generally of course the shipper named in the bill of lading, or the consignor. According to one line of authorities, the fact that the latter does not own the goods is immaterial. Other authorities take the view that where it appears that the goods were not owned by the consignor, and were not shipped on his account, for his benefit, the carrier is not entitled to call on the consignor for freight."

And again the following statement from section 624: "A consignee may become liable for transportation charges by virtue of either an express or an implied agreement to that effect, but ordinarily he is not otherwise liable. He cannot be bound by an agreement between the carrier and the shipper that he shall pay the freight, unless he authorizes the shipper to act for him, or by his conduct has rendered himself liable. The obligation of the consignee to pay the transportation charges commonly rests on his acceptance of the goods. An agreement to pay the charges

is ordinarily implied from the consignee's acceptance of property transported under a bill of lading which specifies that they are to be paid by him. And the authorities are generally to the effect that in any case the consignee's acceptance of the shipment renders him prima facie liable for the freight charges, by virtue of his presumed ownership."

■ Consequently, we feel safe in stating that, when Sackenreuther wrote the letters to the agent of the railroad company asking it to deliver the shipments of cabbage to the Ayoob Company on payment of the freight charges, he accepted the shipments, exercised control and dominion over them as owner and became liable for the payment of the freight charges as owner. The railroad company, in recognizing the right of the consignee to exercise control and dominion over the shipments, and in following his instructions as to delivery, thereby recognized his liability and that of the Ayoob Company for the payment of the freight.

■■ It is true that, in the absence of an agreement to the contrary, the defendant as consignor was liable under the bill of lading for the payment of the freight, yet, under the facts as they existed and as they were known to the railroad company, that liability became secondary, if it was not entirely extinguished, by the fact that the consignee accepted and received the shipments as owner and thereby became prima facie liable for the freight charges. Moreover, the railroad definitely recognized the change of the primary liability of the defendant as consignor to the successive consignees, Sackenreuther and Tom Ayoob Company, not only from the fact that it had knowledge of defendant's lack of interest in and ownership of the cabbage when shipped as alleged in the answer and testified to by the defendant, but also because of the fact that Sackenreuther accepted shipments, exercised acts of ownership over them, and the railroad company followed his instructions relative to the delivery of the shipments and the collection of the freight thereon.

It is well said in the case of Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 443, 68 L.Ed. 900, that one who delivers freight to a carrier for transportation may be found not to be primarily liable for freight charges as it may be shown from the bill of lading or otherwise that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability. And the court in that case in relieving the shipper from liability for the payment of an undercharge in freight, made this significant and pertinent statement: "Moreover, if a secondary obligation of the Central Company was to be implied from the fact of its causing the coke to be received for transportation, the promise was not necessarily one to pay at any time any freight charges which the carrier might find it impossible to collect from the consignee or his assign. The court might have concluded that it guaranteed merely that the consignee or his assign would accept the shipment. For, under the rule of the Fink case, if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of delivery, or not until later. His liability satisfies the requirements of the Interstate Commerce Act."

The trial judge cited and largely relied on the case of Yazoo & M. V. R. Co. v. Zemurray, 5 Cir., 238 F. 789, 790, in support of his decision. In that case Zemurray sold a carload of bananas to A. Pegano at Natchez, Miss., and required the purchaser to deposit the price in a bank in Natchez before the car was shipped. Zemurray shipped the car and received the usual bill of lading, and when the car was delivered to Pegano the railroad failed to collect from him the full amount of freight. After a demand on Pegano and his failure to pay this balance due on the freight, the railroad sued Zemurray as the consignor without first exhausting its means of forcing Pegano to pay the balance. After stating the rule of law to the effect that the carrier may waive its lien and deliver the shipment and hold either the consignor or the consignee for the freight, Judge Foster said in passing on a motion for a new trial: "However, in deciding the case against the plaintiff, I did so because I was satisfied the railroad could have collected from the consignee, if it had sued him; that having elected to collect the freight from the consignee, who was the owner of the fruit and bound to pay the freight ultimately, it would be inequitable to permit the carrier

to change its base and proceed against the consignor, who was only technically liable. Conceding that Zemurray was primarily liable to the railroad because of having made the contract, the mode of shipment was prima facie notice to the carrier that the shipper had parted with ownership on delivery of the goods to it and that the shipment was for account of the consignee. Before suit, the railroad was advised of the actual facts, and property of the consignee subject to execution pointed out. Considering all this, I see no reason to change my opinion."

Learned counsel for plaintiff say that the soundness of the holding in the above case has been criticized in some other cases, and we find this to be true. However, we think the case is not only in harmony with the expressions of the United States Supreme Court in the case of Louisville & N. R. Co. v. Central Iron & Coal Co., supra, but the case was followed and cited with approval in the subsequent and rather appropriate case of St. Louis–San Francisco R. Co. v. Republic Box Company, D.C., 12 F.2d 441, 442. This was a suit to collect an undercharge in freight, and the court discussed the modern trend to look to the situation in each case in applying the law designed to bring about uniformity in rates and recognized the rule that where the consignee accepts the shipment he becomes liable for the freight which satisfies the requirements of the law. The court then makes the following pertinent statement: "This being the law, if the facts in any case warrant the court in finding that the railroad company has looked to the consignee, and not the shipper, it is competent for the court to hold that the facts establish either that the shipper is not liable at all, or is liable only secondarily and upon a showing by adequate proof that all proper steps have been taken in vain against the consignee."

Turning now to the present case and applying this rule to the facts disclosed by the record, we find no difficulty in reaching the conclusion that if the defendant as shipper is liable at all for the freight, he could be liable only secondarily, in which case the plaintiff would have to show that it has not only exhausted all means of collecting the checks from the Ayoob Company but would have to show that it had made an effort to collect from the original consignee. This the railroad does not claim to have done. Not only does the record fail to show any effort on the part of the railroad to enforce collection against these other parties, but it affirmatively shows that no demand was made on the defendant for the payment of the freight for months after the shipment was delivered, notwithstanding the fact that the railroad had full knowledge of all the facts relating to the shipment and the nonpayment of the freight immediately after the checks were dishonored.

For the reasons assigned, the judgment is affirmed at the cost of the appellant in both courts.