# United States Court of Appeals

## For the First Circuit

No. 04-2168

EIMSKIP, THE ICELAND STEAMSHIP COMPANY, LTD;
EIMSKIP USA, INC.,

Plaintiffs, Appellees,

v.

ATLANTIC FISH MARKET, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker,* U.S. District Judge]

Before

Boudin, Chief Judge,

Lynch and Lipez, Circuit Judges.

Gerald J. Zyfers for appellant.
David J. Farrell, Jr. with whom Admiralty Law Office of David
J. Farrell, Jr. was on brief for appellees.

July 27, 2005

_____

*Of the Southern District of New York, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.  This appeal is brought by Atlantic Fish Market, Inc. ("Atlantic"), a co-defendant in the district court, to review a judgment of the district court holding Atlantic liable for freight charges and attorneys' fees.  The plaintiff in the district court was the carrier, EIMSKIP, The Iceland Steamship Company, Ltd. ("EIMSKIP"), which transported the shipments in question--frozen herring--from Massachusetts to Estonia in July 2001.  The story is swiftly told.

In June 2001, prior to the shipments now in dispute, Atlantic booked two shipments of frozen herring to be transported by EIMSKIP from Massachusetts to Estonia ("the June shipments"). The bills of lading listed Mayflower International, Ltd. ("Mayflower") as the fish's shipper and consigned the fish "to order of shipper"; but Atlantic received the freight invoices and paid the charges.  Atlantic also purchased the fish, paying Mayflower half the purchase price upon loading of the cargo and the balance upon its arrival in Estonia.

A month later, three more such shipments were made ("the July shipments"). The district court later found that Atlantic was responsible (among other tasks) for booking two of these shipments with EIMSKIP, negotiating the freight rates, and receiving the cargo in Estonia.  It also found that Atlantic represented to both EIMSKIP and Mayflower that it would pay the freight.  Mayflower took responsibility for examining the fish before shipment,

-2-

coordinating the shipment dates, proofing and finalizing the bills of lading, and administering other shipping details.

As was the case with the June shipments, the bills of lading in July listed Mayflower as the shipper and the goods were consigned "to order of shipper." Mayflower's principal, William C. Quinby, testified at trial that this had been done to ensure that control of the cargo would not pass to Atlantic until Atlantic had paid for the fish. Quinby stated that Mayflower was seeking "to maintain control of the cargo for the owners of the cargo, H&L Axelsson, and not let the cargo be released until they had secure payment." H&L Axelsson is not a party to this proceeding.[1]

When the herring arrived in Estonia in late July, the freight--totaling $91,840--remained unpaid. EIMSKIP placed a hold on the cargo, and Mayflower called EIMSKIP to say that Atlantic had not yet paid the purchase price for the herring and that Mayflower did not wish the cargo to be released to Atlantic. Atlantic, the district judge found, eventually promised again that it would pay for the freight, and EIMSKIP then turned over the herring after Mayflower agreed to the release.

Atlantic then failed to pay the freight charges, first saying that it was having financial trouble and would pay as soon

---

[1]The district court found that Mayflower and Atlantic were not acting as partners in a single venture--rather, the former was a sales agent for the producers of the herring, H&L Axelsson, while the latter was either the buyer of the fish or an agent for or joint venturer with OU Watkins, the ultimate buyer.

as possible and later saying that it would not pay because there had been problems with the cargo. In July 2002, EIMSKIP brought suit against Atlantic and Mayflower in the federal district court in Massachusetts, seeking to recover freight charges and also seeking related collection costs (including attorneys' fees) under a bill of lading provision purporting to make a variety of persons liable for collection costs.[2]

After a bench trial, the district court found that Atlantic and Mayflower had both been shippers of the cargo. Because Mayflower was listed as the shipper and consignee on the bills of lading, the court said that it was presumptively primarily liable for the freight charges. But the court held that in this instance Atlantic was primarily liable (and Mayflower only secondarily liable) because of

> Atlantic's multiple representations to both
> Mayflower and EIMSKIP that it would be liable
> for the cargo; the course of dealings among
> the parties prior to the shipments at issue
> (in particular, Atlantic's payments of the two
> prior invoices [for the June shipments]); and
> EIMSKIP's decision to lift the hold on the
> cargo after speaking to [Atlantic's president
> Boris] Sorkin . . . .

---

[2]The bills of lading provided inter alia that any "Merchant" had to indemnify the carrier for collection costs and defined merchant to include the shipper, receiver, consignee, or bill of lading holder and anyone owning or entitled to possession of the shipment whether as agent or otherwise.

As to collection costs, the district court held that the pertinent condition in the bill of lading making the "merchant" liable applied to both Atlantic and Mayflower and made each company jointly and severally liable for specified costs and attorneys' fees (approximately $62,000).  It entered judgment  against the defendants as to freight and collection costs in accordance with its liability findings.  Atlantic has now appealed, contesting its liability as to both freight and attorneys' fees.

Atlantic's claim on appeal as to freight charges is straightforward.  It says that it was neither shipper nor consignee on the bill of lading and that under the federal Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. app. §§ 1300-1315 (2000), only a party so named in the bill of lading can be held liable for freight charges.  Whether Atlantic could be regarded as a party to the bill of lading despite not being named does not matter because Atlantic's understanding of COGSA as the exclusive basis for liability is mistaken.

COGSA, which applies to specified classes of shipments including this one,  governs certain aspects of the relationship between carrier and shipper.  For example, it imposes specific duties and liabilities on the carrier, including an obligation to furnish a bill of lading to the shipper, 46 U.S.C. app. § 1303; and it provides procedures and a statute of limitations for claims against the carrier for lost or damaged goods, id.  What it does

not do is create a cause of action for, or regulate the collection of, freight charges.[3]

"Absent a relevant statute, the general maritime law, as developed by the judiciary, applies." East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864 (1986). Anyone who contracts to pay for ocean freight can be held liable in accordance with ordinary contract law as applied in maritime matters. See Norfolk S. Ry. Co. v. Kirby, 125 S. Ct. 385, 397 (2004). And oral contracts are valid under general maritime law. See Kossick v. United Fruit Co., 365 U.S. 731, 734 (1961); Fontneau v. Town of Sandwich, 251 F. Supp. 2d 994, 1001 (D. Mass. 2003). Under general maritime law, this is a simple case.

The evidence adduced at trial supports the district court's finding that Atlantic agreed with EIMSKIP to pay the freight for the July shipments in return for EIMSKIP's services in transporting the herring to Estonia. This finding was well supported by subsidiary findings that Atlantic on numerous occasions made oral promises to pay the freight on the July shipments; that Atlantic was invoiced by EIMSKIP for the freight on both the June and July shipments (Mayflower was never invoiced for

---

[3]Another set of federal statutory provisions, 49 U.S.C. §§ 80101-80116, applicable to any transportation of goods via common carrier "from a place in a State to a place in a foreign country," id. § 80102, also imposes statutory duties on carriers and regulates bills of lading for such transportation; but, like COGSA, it does not create liability for freight charges or regulate collection of such charges by the carrier.

these shipments); that Atlantic did in fact pay the freight on the June shipments; and that Atlantic's president failed to dispute the invoices in numerous conversations with EIMSKIP between August 2001 and July 2002.

The only subsidiary finding disputed by Atlantic on this appeal is the district court's finding that Atlantic orally booked the first two of the July shipments. Atlantic's president, who offered the only contradictory testimony, was found by the district court to be "uncooperative, evasive, non-responsive, and less than credible." "[C]redibility determinations are rather well insulated from appellate challenge." Pimentel v. Jacobson Fishing Co., 102 F.3d 638, 640 (1st Cir. 1996). The district court did not commit "clear error"--the applicable standard on review, Fed. R. Civ. P. 52(a); Rational Software Corp. v. Sterling Corp., 393 F.3d 276, 276 (1st Cir. 2005)--in accepting the view that Atlantic booked the shipments.

This is ample to sustain Atlantic's liability without regard to whether Atlantic was technically a party to the bill of lading. Two parties may each make themselves liable to a third party for payment of the same freight on a single shipment--one by a contract reflected in part by the bill of lading and the other by explicit promises and course of conduct independent of the bill of lading. On the district court's findings Atlantic made such

promises both before the voyage and to facilitate release of the cargo.

Whether Atlantic could be held liable on the bill of lading is a separate question. Conceivably someone might be liable on a bill of lading without being named in it, either through agency doctrine or by separately agreeing to be subject to its terms.[4] All that matters in this case is that there is nothing in general maritime law or in the precedents concerning bills of lading that makes them the exclusive means of creating liability for freight charges.

In Louisville & Nashville R.R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 67 (1924), chiefly relied upon by Atlantic, the Supreme Court said that "[t]o ascertain what contract was entered into we look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and as a contract," and that "[o]rdinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one." This probably remains the usual situation.

---

[4]Cf. Pacific Coast Fruit Distributors, Inc. v. Pa. R.R. Co., 217 F.2d 273, 274-75 (9th Cir. 1954) (holding that a defendant, "though not named as a party in the original bill-of-lading became such by amendment, as it were," since the defendant was "designated as consignee by the shipper" after the bill of lading had been executed, "took over control and direction of the shipment and made successive reconsignments thereof").

Yet Louisville & Nashville R.R. Co. itself, as well as circuit courts in subsequent cases, have held that this pattern and presumption can be overcome by statute, by contractual provisions, or by the parties' course of conduct. See Louisville & Nashville R.R. Co., 265 U.S. at 67-68; A/S Dampskibsselskabet Torm v. Beaumont Oil Ltd., 927 F.2d 713, 716-22 (2d Cir.), cert. denied, 502 U.S. 862 (1991); States Marine Int'l, Inc. v. Seattle-First Nat'l Bank, 524 F.2d 245, 247-49 (9th Cir. 1975); see also Capitol Transp., Inc. v. United States, 612 F.2d 1312, 1319-21 & n.10 (1st Cir. 1979) (holding that the bill of lading is not the only evidence as to the identity of the consignee).

The district court also ruled that as between Atlantic and Mayflower, the former was "primarily" liable. In fact the district court said further that Atlantic could not seek indemnity or contribution from Mayflower and that Mayflower would be liable only if EIMSKIP could not collect from Atlantic. Atlantic has failed to challenge this determination on appeal, so we are spared any need for further discussion of the issue.

This brings us to the award of attorneys' fees. In its opening brief, Atlantic offers an argument of three paragraphs comprising two points. The main claim is that the district judge erred in allegedly failing to give Atlantic the requisite time to respond to EIMSKIP's request for fees. The secondary claim is that the district court should have reduced the amount because the fees

sought (so far) are about two-thirds the amount of the underlying freight claim and therefore excessive.

Starting with chronology, the district court entered its main order imposing liability for freight charges, costs and attorneys' fees on July 14, 2004. On July 20, 2004, EIMSKIP filed a declaration in support of attorneys' fees setting forth counsel's invoices by date and providing a brief justification. On July 27, 2004, at Mayflower's request, EIMSKIP filed a supplemental declaration providing daily time sheet summaries and other information. On August 4, 2004, the district judge entered final judgment, including the requested attorneys' fees.

Neither during this two week period, nor afterwards, is there any filing in the district court reflecting an objection or opposition by Atlantic. Now, on appeal--apparently dating from July 27 forward--Atlantic says that it was a violation of Local Rule 7.1 for the district court to act on Atlantic's request without waiting the 14 days provided by the rule for one party to respond to a motion filed by another. See D. Mass. R. 7.1(b)(2). EIMSKIP disputes that the local rule applied, but we need not decide the issue.

If Atlantic actually intended to oppose the request for attorneys' fees and was surprised by a premature entry of judgment, it certainly had a duty to tell the district judge and request an opportunity to respond. Of course, a litigant does not in all

circumstances have an obligation to return to the district judge and challenge every mistake before appealing. But it is impossible to believe that the judge would not have accepted an arguably belated filing where, as here, the deadline was perhaps uncertain because of EIMSKIP's supplemental filing or the applicability of the local rule.

In all events, we need not consider further whether the local rule was applicable or whether the objection should be deemed forfeit. Instead, we deal directly with the single substantive objection that Atlantic now makes to the bill for attorneys' fees. In its opening brief, Atlantic argues that the fee award is inherently unreasonable because it is large and almost two thirds of the amount collected in freight charges. Atlantic has now seen the supporting material and does not suggest that it sees anything wrong with the documentation.

On the merits of the objection, we think it is hopeless. There is no necessary relationship between the amount of the freight owed and the cost of collection, the latter depending on the complexity of the facts and legal issues, the number of depositions and documents, and the length of trial. Nor is the plaintiff carrier, in the face of recalcitrance, required to forgo suit on amounts owed to it because the costs of collection--to be paid by a defendant--equal or exceed the initial debt. So far as we can tell, counsel's fee was well earned.

In its _reply_ brief, Atlantic offers for the first time on appeal that whatever its liability for freight charges, liability for attorneys' fees depends (under the American rule) on a specific statute or contract, and here the only contract providing for such liability is the bill of lading. We add that the broad "merchant" definition in the bill of lading--although it probably embraces Atlantic--arguably is not binding on someone who was not (in some fashion) a party to the bill of lading or otherwise accepted the obligation.

Whether Atlantic is liable for counsel fees presents nice issues--for example, whether Atlantic is implicitly a party to the bill of lading or whether its separate promises to pay for the shipments incorporated counsel fees as well as freight. But Atlantic has forfeited any such argument against its liability for counsel fees by omitting it from its opening brief, thereby depriving EIMSKIP of an opportunity to respond. That is the end of the matter. See _Rivera-Muriente_ v. _Agosto-Alicea_, 959 F.2d 349, 354 (1st Cir. 1992).

The judgment in this case, admirably handled by the district court, is _affirmed_.