## PENNSYLVANIA RAILROAD CO. *v.* MARCELLETTI.

1. CARRIERS—RATES—INTERSTATE COMMERCE.

    Interstate carriers are subject to and compelled to make fixed freight charges or rates, which are stated in tariff filed with interstate commerce commission.

2. SAME—DISCRIMINATION PROHIBITED.

    Discrimination between shippers being prohibited by statute (49 USCA, § 6[7]), as matter of public policy, interstate carriers are required not only to make but to collect for like services uniform charges from shippers.

3. SAME—CONTRACT MAY PROVIDE THAT CONSIGNOR ASSUMES NO LIABILITY FOR FREIGHT.

    Contract for interstate carriage may embody provision that consignor assumes no liability for payment of freight charges, and that carrier is to look for payment to consignee alone.

4. SAME—DELIVERY IN VIOLATION OF BILL OF LADING—CONSIGNOR'S LIABILITY FOR FREIGHT.

    Delivery by interstate carrier in violation of provision in bill of lading that delivery is to be made on payment of charges by consignee will not relieve shipper of obligation to pay freight, in view of statute (49 USCA, § 6[7]) prohibiting discrimination between shippers.

5. SAME—CONSIGNOR LIABLE FOR FREIGHT IN ABSENCE OF "NO RECOURSE" PROVISION.

    Where shipper's written order to carrier to deliver, without bill of lading, interstate shipment to consignee upon payment of all freight and refrigeration charges did not recite that it was without recourse on him, he was not released from liability for freight charges which, through mistake, carrier failed to collect on delivery.

6. SAME—CONSIGNOR CHARGEABLE WITH NOTICE OF PUBLISHED RATE AND OF HIS LIABILITY.

    As matter of law, shipper is chargeable with notice of published rate for interstate shipments and that primary liability of payment thereof is on him.

7. SAME—PRINCIPAL AND AGENT—CONSIGNOR'S LIABILITY FOR FREIGHT.

Failure of consignee, who was consignor's agent in paying freight charges, to pay full amount thereof through mistake of interstate carrier, did not relieve consignor of his primary obligation to pay for service which he caused carrier to render, and therefore he is liable for balance due.

Appeal from Van Buren; Miles (Fred T.), J., presiding. Submitted October 8, 1931. (Docket No. 62, Calendar No. 35,855.) Decided January 4, 1932.

Assumpsit by Pennsylvania Railroad Company, a foreign corporation, against James Marcelletti for balance due for freight charges. Judgment for defendant in justice's court. Plaintiff appealed to circuit court. Judgment for defendant. Plaintiff appeals. Reversed, and new trial granted.

*Howard, Kimball & Howard,* for plaintiff.

*Earl L. Burhans* (*David Anderson,* of counsel), for defendant.

NORTH, J. Plaintiff transported by freight for defendant an interstate shipment of grapes from Paw Paw, Michigan, to the buyer, Highland Fruit Company, at Highland, Illinois. Defendant consigned the shipment to himself, but with direction to "Advise Highland Fruit Company, Highland, Illinois;" also "Deliver on the written order of the consignee without bill of lading." Defendant attached to the draft on purchaser the following written order:

"Paw Paw, Mich. 10-5/27.

"Freight Agent,
  "Pennsylvania Railroad,
    "Highland, Illinois.
"Please deliver on this order, without bill of lading, car FGE 43569, containing 1150 twelve-quarts

and 200 four quarts to Highland Fruit Company upon payment of all freight and refrigeration charges.

"JAMES MARCELLETTI."

Upon presentation of the foregoing order and payment of charges amounting to $145.09 to plaintiff the shipment was delivered to the purchaser. Nearly two months later plaintiff discovered that by mistake it had undercharged for this shipment to the amount of $61.43. In the meantime the purchaser had become a bankrupt. Plaintiff demanded of defendant payment of this deficiency in freight charges. Payment was refused, defendant claiming that under the terms of this shipment the purchaser only was liable. Suit was instituted in justice's court, where defendant had judgment. The same result followed on appeal to the circuit court, and plaintiff has appealed.

The question of law presented is the right of plaintiff to recover from defendant the amount of the undercharge on this freight shipment. Interstate carriers are subject to and compelled to make fixed freight charges or rates, which are stated in the tariff filed with the interstate commerce commission. Discrimination between shippers is prohibited by statute (49 USCA, § 6 [7]). Hence, as a matter of public policy, interstate carriers are required not only to make but to collect for like services uniform charges from shippers. 4 R. C. L. p. 857. In carrying out this policy it has been held:

"It is well settled * * * that though the goods are only to be delivered upon payment by the consignee of the freight charges, the shipper is not relieved on account of a delivery by the carrier of the goods to the consignee without collecting the charges, though credit is voluntarily extended to the con-

signee. This right to collect from the consignor can only be barred by limitations or contract. Bankruptcy of the consignee does not relieve the shipper." *Moss Lumber Co.* v. *Railroad Co.,* 219 Ala. 593 (123 South. 90), citing many cases.

"310. To Whom Carrier May Look for Payment.—Ordinarily a carrier has a right to look for his compensation to the person who required him to perform the service by causing the goods to be delivered to him for transportation, and that person is generally of course the shipper named in the bill of lading, or the consignor. The fact that the latter does not own the goods has been held immaterial, on the ground that the carrier's contract and right to recover his freight cannot be made to depend on what may prove to be the legal effect of the negotiations between the consignor and the consignee on the title to the property which is the subject of transportation. Furthermore, even though there is a stipulation in a bill of lading providing that the consignee shall pay·the freight, that does not of itself relieve the consignor, and a carrier' is not bound at his peril to enforce the payment of freight from the consignees. The usual clause in bills of lading, that a cargo is to be delivered to the person named, or his assignees, 'he or they paying freight,' is only inserted as a recognition or assertion of the right of the master of a ship to retain the goods carried until his lien is satisfied by payment of the freight; it imposes no obligation on him to insist on payment before delivery of the cargo. If he sees fit to waive his right of lien and to deliver the goods without payment of the freight, his right to resort to the shipper for compensation still remains." 4 R. C. L. p. 857, and cases cited.

Undoubtedly the contract for carriage may embody a provision that the consignor assumes no liability for payment of freight charges, and that the carrier is to look for payment to the consignee alone.

Such was the contract in *King* v. *Van Slack,* 193 Mich. 105. See *Moss Lumber Co.* v. *Railroad Co., supra.* But the bill of lading in the instant case contains the following provision:

"If this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:

"The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. (See section 7 of conditions.) (Signature of Consignor.)"

This statement was not signed by defendant. Notwithstanding this, he claims that since the carrier knew that delivery was to be made only upon presentation of the written order above noted, which recited that delivery was to be upon payment of all freight and refrigeration charges, defendant was relieved of his obligation to pay the freight the same as though he had signed the above-quoted statement contained in the bill of lading. In this we cannot agree. Instead, the conditions under which this shipment was made were practically the same as though there had been indorsed upon the bill of lading a notation that the charges were to be paid by consignee. As held by the authorities hereinbefore cited and many others, in view of the provision in the interstate commerce act, delivery by the carrier in violation of such a provision will not relieve the shipper from the obligation to pay the freight. There was nothing in the consignor's notice accompanying this shipment reciting that it was "without recourse" to him, as there would have been had he signed the portion of the bill of lading provided for in such cases. As a matter of law he was chargeable with notice of the published rate for such shipments and that the primary liability of payment was upon him. As was said in *Louis-*

*ville & N. R. Co.* v. *Sloss-Sheffield S. & I. Co.,* 269 U. S. 217 (syllabus) (46 Sup. Ct. 73):

"The burden of the published rate rested on the consignor under the bill of lading; the consignee, in paying the freight, acted solely as the consignor's agent."

The failure of the consignor's agent to pay the full amount of freight charges does not relieve the consignor of his primary obligation to pay for the service which he caused the carrier to render.

Judgment for defendant in the circuit court was rendered on the theory that plaintiff's delivery of this shipment without collecting the full amount of freight from consignee was a breach of its contract with defendant, that damage resulting from such breach constituted a counterclaim which exactly offset plaintiff's claim. To so hold would be contrary to the holding of the authorities hereinbefore cited and in contravention of the provision against discrimination embodied in the interstate commerce act. Defendant in asserting his counterclaim relies upon *Chicago & North Western R. Co.* v. *Lindell,* 281 U. S. 14 (50 Sup. Ct. 200). We think that case is not applicable to the issue here presented, which involves nothing more or less than the right of the carrier to collect the full amount of its charge for the shipment; whereas in the case last above cited the shipper had an independent claim against the carrier for damage of goods in transit. The propriety and justice of permitting a counterclaim of such an independent cause of action is obvious and in no way violates the interstate commerce act.

Judgment of the circuit court is reversed, the case remanded, and a new trial ordered. Costs to appellant.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.