WETTLAUFER MANUFACTURING CORPORATION *v.*
DETROIT BANK.

1. CARRIERS—BILL OF LADING—SIGNATURE.
   A bill of lading must embody within its written or printed
   terms the signature of the carrier in order to be valid (3
   Comp. Laws 1948, § 482.2).

2. SAME—BILL OF LADING—RECEIPTS—CONTRACTS.
   A bill of lading is both a receipt for goods by a carrier and a
   contract to carry.

3. SAME—BILLS OF LADING—SIGNATURE—MISREPRESENTATION.
   Where instruments attached to sight draft were not signed by
   a carrier they could not be bills of lading and bank
   teller represented to drawee that they were straight bills
   of lading attached, there was a misrepresentation of an im-
   portant fact (3 Comp. Laws 1948, § 482.2).

4. FRAUD—INTENT.
   Intent to defraud may not be a wilful intent to deceive but
   may be inferred from the circumstances and the result
   accomplished.

5. SAME—RECKLESS MISINFORMATION—SIGHT DRAFTS—ATTACHED
   INSTRUMENTS.
   Bank teller, as collecting officer of defendant bank presenting
   a sight draft for payment, must be charged with knowledge
   of its effect on the drawee when the teller recklessly, and

REFERENCES FOR POINTS IN HEADNOTES
[1] 9 Am. Jur., Carriers, § 392.
[2] 9 Am Jur., Carriers, § 412.
[4] 23 Am. Jur., Fraud and Deceit, § 4.
[5] 23 Am. Jur., Fraud and Deceit, § 128.
[6] 23 Am. Jur., Fraud and Deceit, § 20.
[7] 23 Am. Jur., Fraud and Deceit, § 3.
[8] 23 Am. Jur., Fraud and Deceit, § 22.
[9] 7 Am. Jur., Banks, § 444.
[10] 7 Am. Jur., Banks, § 506.

without any reservation, assumed the responsibility of informing plaintiff drawee that "straight bills of lading" were attached to the draft when the fact is that the instruments attached were not bills of lading at all (3 Comp. Laws 1948, § 482.2).

6. SAME—ELEMENTS OF ACTIONABLE FRAUD.
To constitute actionable fraud, it must appear with a reasonable degree of certainty that the defendant made a material representation; that it was false; that when made the defendant knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; that he made it with the intention that it should be acted upon by plaintiff; that plaintiff acted in reliance upon it and suffered injury.

7. SAME—REPRESENTATIONS.
A representation within the meaning of the law of fraud is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of fact conducive to action.

8. SAME—CONSTRUCTIVE KNOWLEDGE—MISREPRESENTATION.
The knowledge necessary to establish *scienter* of liability for misrepresentation may be constructive as from a statement made as of the speaker's knowledge and in ignorance of its truth.

9. BANKS AND BANKING—RELATIONSHIP BETWEEN BANK AND DEPOSITOR.
The relationship between a bank and its depositor is that of debtor and creditor.

10. SAME—AUTHORITY FOR PAYMENT OF DEPOSITOR'S MONEY.
A bank which pays out money for its depositor must show a valid authority to do so if it expects to debit the depositor's account.

11. SAME—DEBITING OF ACCOUNT—CONSENT INDUCED BY MISREPRESENTATION.
A bank which induces consent to debit its depositor's account by virtue of its teller's misrepresentation is without authority to make such debit.

12. SAME—BANK AS AGENT OF DEPOSITOR—SIGHT DRAFTS.
While bank in which plaintiff had a deposit was the agent of bank collecting sight draft and remitting the proceeds, when

it debited plaintiff drawee's account, the bank of deposit was acting as debtor to plaintiff as its creditor.

13. BILLS AND NOTES—SIGHT DRAFT—CONSENT TO DEBIT—PROFIT—FRAUD.

Drawee of sight draft, who was induced to consent to payment thereof by virtue of bank teller's misrepresentation that attached papers were straight bills of lading, was entitled to recover amount of debit to its account from bank notwithstanding the bank did not profit from the transaction and there was no intentional fraud.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 13, 1949. (Docket No. 32, Calendar No. 44,360). Decided May 18, 1949. Rehearing denied June 29, 1949.

Assumpsit by Wettlaufer Manufacturing Corporation against The Detroit Bank for money paid by defendant on sight draft. Judgment for defendant. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff.

*Jay F. McMullen* and *Nelson S. Shapero,* for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant.

BOYLES, J. Plaintiff corporation appeals from a judgment for the defendant bank in a case heard by the court without a jury, wherein the plaintiff sued the defendant bank to recover $12,813.75 paid out by the bank from plaintiff's checking account. The facts and circumstances are not in dispute.

Sometime in March, 1948, the plaintiff corporation through its treasurer made arrangements to buy some steel from the Williams Steel Sales, on the representation of Williams that he could procure steel for the plaintiff from a certain steel manufacturer. It was understood that plaintiff would pay

for the shipments of steel on presentation of a sight draft with bills of lading attached. Williams also requested that plaintiff establish credit with a bank in Steubenville, Ohio. Plaintiff was a depositor in the defendant Detroit Bank and at plaintiff's request the Detroit Bank made appropriate representations to the Steubenville bank. Plaintiff's treasurer informed an officer of the Detroit Bank that he had arranged with a seller of steel to ship the steel on sight draft with bills of lading attached, and asked that the bank honor such sight draft when it came to the bank.

On March 22, 1948, a teller of the defendant bank telephoned plaintiff's treasurer that the bank had for collection a sight draft drawn on plaintiff by the Williams Steel Sales. At the trial before the court, the teller testified:

"*Q.* When you received that draft, what did you do?

"*A.* I called the Wettlaufer Manufacturing Company, told them that we had a draft in on them drawn by Williams Steel Sales.

"*Q.* Who did you talk to at the Wettlaufer Manufacturing Company?

"*A.* I talked to Mr. McKenzie (plaintiff's treasurer).

"*Q.* What did Mr. McKenzie say to you?

"*A.* Mr. McKenzie asked me what documents were attached, what the invoices showed, and if there were bills of lading attached.

"*Q.* What did you say?

"*A.* I said there were straight bills of lading attached, and some invoices.

"*Q.* And then what did he say?

"*A.* Mr. McKenzie then asked me if I would run the weight of steel shown on the bills of lading and get a total sum for the total amount of steel purported to be listed on the bills of lading.

"*Q.* Did you do that?

"*A.* I did that and gave him the total.

"*Q.* What happened next?

"*A.* Mr. McKenzie said, 'Well, that's fine.' He said, 'Charge the draft to our account.'

"I then charged the draft to plaintiff's account, attached an advice of charge to the draft signed by Mr. Goddard, a bank officer, and we mailed the draft and the accompanying documents to plaintiff, in accordance with Mr. McKenzie's instructions to me."

The defendant bank, upon debiting plaintiff's account with the amount of the draft, mailed the documents to plaintiff and remitted the proceeds of the draft to the Steubenville bank. About 4 days later the plaintiff, not having received any shipment of steel, on examination of the bills of lading discovered that they had not been signed by any carrier, nor did they purport to be signed by any carrier; the so-called bills of lading did not in fact show any shipment of steel. Plaintiff never did receive any steel, Mr. Williams in the meantime having absconded. Plaintiff received the draft and documents from the bank on March 24th, and about 4 or 5 days later notified the bank of the fraud and returned the draft and attached documents to it. The defendant bank then endeavored to stop payment to the Steubenville bank, but it was too late.

Plaintiff then demanded of defendant that the amount which had been charged to its account in the bank be credited back to plaintiff and restored to its account. Upon defendant's refusal plaintiff then started this suit against the bank for the $12,-813.75 withdrawn from plaintiff's account. The trial court entered judgment of no cause for action from which plaintiff appeals.

The defendant claimed in the circuit court, and again here on the appeal, that there was no misrepresentation of fact by its teller in the conversation with plaintiff's treasurer. There is no merit in that

claim.  The defendant bank had advance informa-
tion of the arrangement between the plaintiff and
Williams.  The bank teller frankly admitted that
when asked by plaintiff's treasurer what documents
were attached to the sight draft he told the treasurer
that "there were straight bills of lading attached."
He further testified that plaintiff's treasurer "want-
ed to know how much the bills of lading showed had
been shipped," whereupon he computed the amount,
301,500 pounds of steel, and so informed the plain-
tiff.  As a matter of fact, the instruments attached
to the sight draft were not bills of lading.  While
they were made out on forms of the Aetna Freight
Lines, Inc., titled "Uniform Straight Bill of Lad-
ing," they had not been issued or signed by the car-
rier.  Section 2 of the uniform bill of lading act*
provides:

"Every bill must embody within its written or
printed terms:    *    *    *
"(g) The signature of the carrier."

A bill of lading is both a receipt for goods by a
carrier, and a contract to carry.  It is symbolic of
the property itself.  Without the signature of a car-
rier, it is not a bill of lading.  It is not a receipt of
goods by a carrier, nor a contract to transport.  The
bank had neither a receipt from a carrier nor any
instrument showing a shipment of steel.  The most
essential element of a bill of lading was lacking—the
same as if an instrument labeled a deed or a promis-
sory note lacked the signature of a grantor or a
maker.  The papers which the defendant's teller
represented to plaintiff's treasurer as being
"straight bills of lading" were as a matter of fact
worthless, and that fact was apparent on the face

* Act No. 165, § 2, Pub. Acts 1911 (3 Comp. Laws 1948, § 482.2
[Stat. Ann. § 22.1122]).

of the instruments. There was a misrepresentation of a very important fact.

The defendant further contends that inasmuch as there was no wilful intent to deceive, and because the bank received no profit from the transaction, it should not be held liable for the resulting loss to the plaintiff.

The defendant bank had received from the Steubenville bank a sight draft against the plaintiff, for collection. In approaching the plaintiff, the defendant bank was acting for the Steubenville bank. While it is true that the teller had no wilful intent to deceive the plaintiff, it is obviously true that the teller intended to convey to the plaintiff, as a matter of fact, that the sight draft with the papers attached was one which the plaintiff could be expected to pay, and could properly do so. Intent need not be expressed, but may be inferred from the circumstances, and the result accomplished. The teller admitted that he knew that the function of a draft with a bill of lading attached was to insure to the buyer that he would get the goods represented by the bill of lading. The teller might have protected both the plaintiff and the bank merely by leaving it to the plaintiff to decide whether papers attached to the draft were sufficient. Instead, the teller took the responsibility of informing the plaintiff that "straight bills of lading" were attached to the draft. The teller, as the collection officer of the defendant bank presenting a sight draft for payment, must be charged with knowledge of its effect on the plaintiff when the teller recklessly, and without any reservation, assumed the responsibility of informing plaintiff's treasurer that "straight bills of lading" were attached to the draft.

"The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a

material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Candler* v. *Heigho,* 208 Mich. 115.

In the more recent case of *Toering* v. *Glupker,* 319 Mich. 182, the Court said:

"The trial court followed the rule laid down in *Krushew* v. *Meitz,* 276 Mich. 553, as to what must be shown in order to establish actionable fraud charging, *inter alia,* that plaintiff must prove that when defendant made a false material representation 'he knew it was false or made it recklessly, without any knowledge of its truth and as a positive assertion.' While plaintiff cites cases holding that *scienter* need not necessarily be proved to establish actionable fraud, and we think that an instruction to that effect would not have been in error, plaintiff did not specifically request such charge. The testimony discloses that defendant bought the tractor secondhanded, receiving with it a certificate of title issued in 1937. The court's instruction that this fact was to be considered by the jury in determining whether any representation made by defendant as to the model of the tractor was made with knowledge of its falsity or recklessly, without any knowledge of its truth and as a positive assertion, was fully adequate to the factual situation and the state of the record before the court. In the exercise of reasonable care the defendant could not have been ignorant of the fact that the tractor was manufactured at least as far back as 1937. If he represented it to be a 1940 model, he either made the representation knowing it

to be false or recklessly without regard to its truth.
* * *

" 'A representation within the meaning of the 'law of fraud is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of fact conducive to action.' 23 Am. Jur. p. 755, § 3."

"The knowledge necessary to establish *scienter* or liability for misrepresentation may be constructive, that is, under proper circumstances it may be implied or imputed. Such knowledge will be implied from a statement made as of the speaker's knowledge and in ignorance of its truth. It is not necessary that the speaker should expressly guarantee the truth of his statement, or expressly represent that it is true of his personal knowledge, an implied affirmation of truth as of personal knowledge being sufficient. An unqualified and positive statement is by implication a statement as of the speaker's knowledge. Accordingly the unqualified affirmation of a fact not known to be true may constitute fraud, subjecting the speaker to liability, even though he lacked actual knowledge of its falsity and was himself deceived." 37 C. J. S. § 21, pp. 255–257.

While actual intent to deceive is absent in this case, under the circumstances shown the law will impute the intent. We have here all the necessary elements of misrepresentation and fraudulent intent specifically detailed in *Candler* v. *Heigho, supra.* The result is the same as if no bills of lading, or papers purporting to be bills of lading, had been attached to the draft.

The relationship between a bank and its depositor is that of debtor and creditor (*Owosso Masonic Temple Ass'n* v. *State Savings Bank,* 273 Mich. 682), and if the bank pays out money for the depositor it must show a valid authority to do so if it expects to debit the depositor's account. Plaintiff's

consent to debit its account in this case was induced by defendant's misrepresentation, and thus is no authority at all.

Defendant raises the question whether or not it was acting as agent for plaintiff or as agent of the Steubenville bank. While that is not controlling of the result, the defendant was agent of the Steubenville bank in collecting the draft and remitting the proceeds, but when it debited plaintiff's account it was acting as debtor to plaintiff as its creditor. Plaintiff's transactions with the bank established the relationship of debtor and creditor, and as debtor the bank is liable for disbursing the money on deposit which the bank owed to the plaintiff. This relationship distinguishes this case from *Rosenberg v. Cyrowski,* 227 Mich. 508, where this Court said:

"But when the person making the representations is not a party to the transaction and in no way profits by the act of the party defrauded in reliance on the representations made by him, he is liable for damage only in case he knows the representations made by him to be false, and makes them for the purpose of deception and with the intent that they shall be relied on and acted on by the person to whom they are made and loss or damage results therefrom."

For the same reason the instant situation does not come within *Kolinski v. Solomon,* 303 Mich. 710, where the Court held that an attorney was not liable for conspiracy to defraud when his only connection with the alleged conspiracy was to recommend a builder to the plaintiff, whereupon the plaintiff suffered damage because of lack of experience of the builder. It was there held that the attorney could not be held liable for conspiracy on the theory that he was a party to the transaction between the plaintiff and the builder. In each of the *Rosenberg* and *Kolinsky Cases, supra,* there was no privity of con-

tract between the plaintiff and the defendant. On the contrary, in the case now before us, the relationship between plaintiff and defendant was that of creditor and debtor.

The judgment of no cause for action is set aside and the case remanded for entry of judgment for the plaintiff, with costs.

Sharpe, C. J., and Bushnell, Reid, North, Dethmers, Butzel, and Carr, JJ., concurred.