# United States Court of Appeals
## For the First Circuit

No. 15-2482

MEDITERRANEAN SHIPPING CO., S.A.,

Plaintiff, Appellee,

v.

BEST TIRE RECYCLING, INC.,

Defendant, Appellant,

v.

ARMSTRONG INTERNATIONAL, INC., d/b/a ARMSTRONG EXCHANGE;
JOHN WAYNE KWANGE,

Third Party Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

Before
Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Israel Roldán-González, with whom Isis Aimée Roldán-Márquez
were on brief, for appellant.
Alberto J. Castañer-Padró, with whom Castañer Law Offices
P.S.C. was on brief, for appellee.

February 6, 2017

**TORRUELLA**, **Circuit Judge**.   The present dispute arises out of a contract for the shipment of used tires from Puerto Rico to Vietnam.  The shipment accrued demurrage charges, port storage charges, and related administrative fees, apparently because it arrived late to Vietnam.  On summary judgment, the district court found that Best Tire Recycling, Inc. ("Best Tire") was the shipper, and therefore, pursuant to the bills of lading, was liable for the charges and fees to the carrier, Mediterranean Shipping Co. ("Mediterranean").  Best Tire now contends that the district court erred in holding that there were no genuine issues of material fact as to whether Best Tire was the shipper.  However, Best Tire was designated as the shipper on the bills of lading, and we therefore affirm the findings of the district court.

## I.   Background

Mediterranean is an ocean common carrier that transports goods between the United States and foreign countries.  Best Tire is a Puerto Rico-based corporation that collected and transported scrap tires, among other things, within Puerto Rico.  In 2012, John Wayne Kwange ("John Wayne"), doing business as Armstrong Exchange and/or Armstrong International, Inc. ("Armstrong") hired Best Tire to deliver forty containers of scrap tires to the port of San Juan, Puerto Rico for $600 a container.  Best Tire instructed John Wayne to contact Mediterranean, the common

-2-

carrier, to get booking information and then inform Best Tire of the arrangement.

On April 3, 2012, John Wayne emailed Gypsa Carrión, of Oceanic General Agency, an agent of Mediterranean, and requested price quotes to ship tires from San Juan, Puerto Rico to Haiphong, Vietnam. Best Tire was copied on this email and admits to receiving it. In this email, John Wayne designated Best Tire as the "shipper" and Phong Vuong Limited Company as the "consignee." On April 11, Ms. Carrión sent a reply email to John Wayne and Nydia Caro, Best Tire's administrative assistant, providing them with "booking numbers for the next 4 sailings" and further notifying them that Mediterranean was "creating the shipper in their system." In this email, Ms. Carrión also stated: "[Y]our trucker may start pulling out the [container] units with . . . just the [booking] number[s]."

Once Best Tire received the booking information, it subcontracted with IPM Transport to bring empty containers from the port of San Juan to Best Tire's storage facilities in Rincón, Puerto Rico, and then to transport the containers, filled with scrap tires, back to Mediterranean's cargo ship in the port of San Juan. Between April and May of 2012, all containers were delivered and Best Tire charged John Wayne $600 per delivered container. Mediterranean issued bills of lading for each of the scrap tire

shipments and, consistent with John Wayne's initial email, identified Best Tire as the shipper.

Best Tire admits that it received the bills of lading. Mediterranean's standard bill of lading provides that, inter alia, "[e]very Person defined as a Merchant is jointly and severally liable towards [Mediterranean] for all of the various undertakings, responsibilities, and liabilities of the Merchant." A "Merchant" is defined to "include[] the Shipper, Consignee, holder of th[e] Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person." "Freight" is defined to "include[] the freight and all charges, costs and expenses whatsoever payable to [Mediterranean] in accordance with the applicable Tariff and this Bill of Lading, including storage, per diem and demurrage." Mediterranean's standard bill of lading also incorporates "[t]he terms and conditions of [Mediterranean's] applicable Tariff," which include information about "demurrage, per diem, storage expenses and legal fees."

When the cargo ultimately arrived at its destination in Vietnam, the consignee refused to accept delivery, apparently because the shipment arrived late. As a result of the consignee's refusal to accept the shipment, Mediterranean had to store it. In

-4-

total, this stored cargo incurred demurrage charges totaling $353,083.50, port-storage charges totaling $36,780, and an administrative fee totaling $300. Moreover, Mediterranean argued "that $69,889.54 of the cost to ship the freight from Puerto Rico to Vietnam remained unpaid." Best Tire received a total of $24,000 for its services in this transaction.

The district court sitting in admiralty granted Mediterranean's motion for summary judgment, holding that Best Tire was a party to the contract of ocean carriage and as such was liable to Mediterranean for unpaid ocean freight charges, shipping container demurrage, port storage and related administrative fees.

## II. **Standard of Review**

"Summary judgment is appropriate when the record shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "We review de novo the grant of a motion for summary judgment." Id. "[W]e may affirm the entry of summary judgment on any ground made manifest by the record, so long as the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Batista v. Cooperativa de Vivienda Jardines de San Ignacio, 776 F.3d 38, 42 (1st Cir. 2015) (citation omitted).

## III. Discussion

"'To ascertain what contract was entered into[, courts] look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and as a contract' and that '[o]rdinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one.'" EIMSKIP v. Atlantic Fish Market, Inc., 417 F.3d 72, 77 (1st Cir. 2005) (quoting Louisville & Nashville R.R. v. Cent. Iron & Coal Co., 265 U.S. 59, 67 (1924)).

Nevertheless, the "pattern and presumption" that the party identified as "shipper" on the bills of lading is the party that bears liability "can be overcome by statute, by contractual provisions, or by the parties' course of conduct." Id. (citing Louisville & Nashville R.R., 265 U.S. at 67-68.).

It is uncontested that Best Tire is designated as the shipper on all of the bills of lading. Best Tire does not argue that the presumption this creates is overcome by statute or by a contractual provision. Rather, Best Tire argues that the parties' course of conduct overcomes the pattern and presumption that Best Tire bears liability. We find that it does not.

Best Tire relies heavily on our reasoning in EIMSKIP. In EIMSKIP, the district court had found Atlantic liable to

-6-

EIMSKIP, the common carrier, even though Atlantic was not identified as the shipper on the bills of lading; Atlantic appealed, and we affirmed. Id. at 76. We relied on Atlantic's conduct: it had booked the shipments with EIMSKIP, it was invoiced for the shipments, and it had orally agreed to pay for them. Id. Mayflower, the party designated as the shipper on the bills of lading, was never invoiced for the shipments. Id. Best Tire sees a similarity between the conduct of John Wayne and/or Armstrong and the conduct of Atlantic, in that John Wayne was the one who contacted Mediterranean to organize the shipments and, seemingly, prepaid a number of the shipments.

The fundamental flaw in Best Tire's argument is that in EIMSKIP, we found that both Mayflower (who was identified as the shipper on the bills of lading) and Atlantic (who was not) were liable to the carrier. "Two parties may each make themselves liable to a third party for payment of the same freight on a single shipment -- one by a contract reflected in part by the bill of lading and the other by explicit promises and course of conduct independent of the bill of lading." Id. Thus, our reasoning in EIMSKIP does not absolve Best Tire of liability. At most, our reasoning suggests that John Wayne and/or Armstrong could also be held liable -- however, the district court was unable to serve either John Wayne or Armstrong, as they are apparently nowhere to

be found. In any event, Mediterranean can elect which party it will hold liable, because Best Tire is jointly and severally liable to Mediterranean -- the question whether John Wayne and/or Armstrong could also be held liable is not before us.

Best Tire also relies on Norfolk S. Ry. v. Groves, 586 F.3d 1273 (11th Cir. 2009), for the proposition that "a party must assent to being named as a consignee on the bill of lading to be held liable as such, or at the least, be given notice that it is being named as a consignee in order that it might object or act accordingly." Id. at 1282. We need not decide whether Best Tire's silence can be construed as assent to being named a party on the bill of lading, because Best Tire was given notice of this fact. Best Tire had received two email messages notifying it that it would be the shipper. As Best Tire itself admits, it "could have refused being named as the shipper by replying to those messages." In addition, Best Tire received the six bills of lading on four separate occasions between April 24, 2012 and June 28, 2012. Best Tire was designated as the shipper on all these bills of lading. Yet Best Tire made no objections until August of 2013, when it received invoices for demurrage and other charges -- well over a year after it had accepted the bills of lading.[1]

---

[1] Best Tire raised two additional issues in its appeal brief: (1) because some of the shipments were marked as "freight prepaid" Mediterranean is estopped from collecting from Best Tire;

-8-

## IV.  Conclusion

The decision of the district court is affirmed.

**Affirmed.**

---

(2) pursuant to the doctrine of laches, Mediterranean may only collect demurrage and port charges accrued in the 180 days prior to the filing of the complaint by Mediterranean.  The first of these issues is being raised for the first time on appeal. Although Best Tire did identify "laches" as one of several affirmative defenses in its complaint, these arguments were never clearly raised or argued before the district court.  Both of these arguments are therefore waived.  See Nat'l Ass'n of Soc. Workers v. Hardwood, 69 F.3d 622, 627 (1st Cir. 1995).