# STATE OF MICHIGAN

# COURT OF APPEALS

TOP WORLDWIDE LLC,

   Plaintiff-Appellee,

v

MIDWEST MOLDING, INC.,

   Defendant-Appellant,

and

G & B GLOBAL LLC,

   Defendant.

UNPUBLISHED
April 20, 2017

No.  330366
Oakland Circuit Court
LC No.  2014-144633-CK

Before:  SAWYER, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Defendant Midwest Molding, Inc. ("Midwest"), appeals as of right the trial court order granting summary disposition in favor of plaintiff.  We affirm.

## I.  FACTUAL BACKGROUND

Plaintiff is in the business of arranging freight transportation among shippers, receivers, and carriers.  It served as the transportation broker for shipments of parts that defendant G & B Global, LLC ("G & B"), purchased from Midwest.  For nearly two years, Midwest would prepare and sign bills of lading for the shipments, and G & B would pay plaintiff for its services. Plaintiff then would pay the carriers involved in the transactions.  However, in November 2013, G & B went out of business, leaving 35 shipments arranged by plaintiff unpaid.

Plaintiff then initiated this lawsuit seeking payment from G & B and Midwest for the 35 shipments.  A default judgment was entered against G & B in March 2015.[1]  Later, plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(10) with regard to Midwest.

---

[1] G & B is not a party to this appeal.

-1-

Midwest responded by contending that summary disposition in favor of plaintiff was improper, and that the court should instead grant summary disposition in favor of Midwest.

After a hearing, the trial court granted plaintiff's motion for summary disposition. The court noted that a bill of lading generally constitutes a contract between the shipper-consignor and the carrier, and that the shipper remains primarily liable for the shipping costs unless the bill of lading provides otherwise or other circumstances clearly indicate that the shipper is exempted from liability. The court concluded that the bill of lading generated by Midwest for each shipment constituted a contract, and that Midwest had failed to establish that it was not primarily liable for the corresponding freight charges. Specifically, the court noted that Midwest identified itself as the shipper (and, therefore, the consignor) on the bills of lading, and that it had failed to demonstrate that it was excused from liability based on a prior written contract or by marking the nonrecourse provision in the bills of lading. The court reasoned that the mere fact that the bills of lading were marked "collect" did not release Midwest from liability. It also rejected Midwest's reliance on *Thunderbird Motor Freight Lines, Inc v Seaman Timber Company, Inc*, 734 F2d 630 (CA 11, 1984), concluding that "this case bears no resemblance to *Thunderbird*" because the evidence demonstrates that Midwest was significantly more involved in the coordination and logistics of the shipments at issue than the shipper in *Thunderbird*. The court rejected Midwest's other claims concerning plaintiff's characterization of the bills of lading as contracts and whether Midwest constituted the "shipper," reasoning that the bills of lading, produced by Midwest, clearly undermined its claims. The court concluded, viewing all of the evidence in the light most favorable to Midwest, that there was no genuine issue of material fact, and plaintiff was entitled to judgment as a matter of law.

## II. STANDARD OF REVIEW

"We review de novo motions for summary disposition brought under MCR 2.116(C)(10)." *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). When reviewing such a motion, we may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes" when ruling on a motion for summary disposition. *Wells Fargo Bank, NA v SBC IV REO, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 328186); slip op at 8 (quotation marks and citation omitted).

MCR 2.116(C)(10) provides that a trial court may grant summary disposition with regard to all or part of a claim when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "The moving party must specifically identify the matters that have no disputed factual issues, and it has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). If the moving party properly supports its motion, the burden then shifts to the opposing party to demonstrate with evidentiary materials that a genuine issue of material fact exists. *Id.* at 440-441. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open

-2-

an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

We also review *de novo* "questions involving the proper interpretation of a contract or the legal effect of a contractual clause . . . ." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).[2] "[C]ontracts must be read as a whole." *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 447; 886 NW2d 445 (2015). "[C]ourts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003) (quotation marks and citation omitted). The contract terms should be interpreted "in accordance with their commonly used meanings and in the particular context of" the contract at issue. *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 297; 778 NW2d 275 (2009). Also, when construing contractual terms, "due regard must be had to the purpose sought to be accomplished by the parties as indicated by the language used, read in the light of the attendant facts and circumstances." *Id.* at 298 (quotation marks and citation omitted).

## III. ANALYSIS

Midwest contends that the trial court improperly granted plaintiff's motion for summary disposition because the bills of lading did not have "the effect of law" and were not controlling as a matter of law. In the alternative, Midwest argues that the parties' course of dealing altered any presumption of liability created by the bills of lading. We disagree.

A bill of lading serves three purposes: it (1) "records that a carrier has received goods from the party that wishes to ship them," (2) "states the terms of carriage," and (3) "serves as evidence of the contract for carriage." *Norfolk S R Co v Kirby*, 543 US 14, 18-19; 125 S Ct 385; 160 L Ed 2d 283 (2004). Accordingly, "[t]he bill of lading is the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers." *Southern Pacific Transp Co v Commercial Metals Co*, 456 US 336, 342; 102 S Ct 1815; 72 L Ed 2d 114 (1982); see also *Wettlaufer Mfg Corp v Detroit Bank*, 324 Mich 684, 689; 37 NW2d 674 (1949) ("A bill of lading is both a receipt for goods by a carrier, and a contract to carry.").[3]

---

[2] Bills of lading are subject to the same principles of contract interpretation as other contracts. *CSX Transp, Inc v Meserole St Recycling*, 618 F Supp 2d 753, 768-769 (WD Mich, 2009), citing *EF Operating Corp v American Bldgs*, 993 F2d 1046, 1050 (CA 3, 1993), and *Oak Harbor Freight Lines, Inc v Sears Roebuck, & Co*, 513 F3d 949, 955 (CA 9, 2008).

[3] Midwest contends that it intended for the bills of lading to function solely as receipts or "shipping manifests" that listed the goods transported between itself and G & B. However, because the law recognizes that bills of lading may serve as both receipts and contracts, *Norfolk S R Co*, 543 US at 18-19, even a mutual understanding that the bills of lading were to function as receipts does not necessarily compel a finding that the bills of lading may not also function as contracts under which Midwest remains liable for freight charges.

Midwest argues that the bills of lading at issue in this case are not enforceable or controlling because "after the dismissal of the [f]ederal filed rate doctrine[,] bills of lading did not have the effect of statute [sic], were not enforceable as a matter of law, and there is no duty to collect the related freight charges." In support of this claim, Midwest relies heavily on *Transit Homes of America, Div of Morgan Drive Away, Inc v Homes of Legend, Inc*, 173 F Supp 2d 1185, 1190-1192 (ND Ala, 2001), which held that the plaintiff, a carrier who was seeking to recover unpaid freight charges from a shipper, could not demonstrate that the federal district court had subject matter jurisdiction over its claim. In rejecting the plaintiff's alternative bases for jurisdiction, the court explained that "federal law no longer gives rise to a right or a duty of a carrier to recover unpaid charges from a shipper under the circumstances present in this case," as the Interstate Commerce Commission Termination Act's ("ICCTA") termination of a carrier's obligation to file tariffs also eliminated a carrier's federal duty to recover unpaid freight charges. *Id*. at 1189-1191.

Midwest's reliance on *Transit Homes* is misplaced for multiple reasons. Most importantly, however, its conclusion that the termination of the "filed-rate doctrine" destroyed the legal basis of plaintiff's contractual claim and the customary contract principles that apply to bills of lading is not accurate. The portions of *Transit Homes*, 173 F Supp 2d at 1191, emphasized by Midwest discussed "[t]he *strict obligation of a carrier to collect its full fee*" under the former tariff system and filed-rate doctrine, which was "based upon the policy . . . to achieve uniformity in freight transportation charges, and thereby eliminate the discrimination and favoritism that had plagued the railroad industry in the late 19th century." (Emphasis added; quotation marks and citation omitted.) As the court explained, "Under [the tariff] system, carriers had to charge and collect the 'filed rate' set forth in their filed tariffs, no more and no less, so a carrier's failure to recover unpaid charges due under a tariff from one shipper would be the equivalent of showing unlawful discrimination in rates." *Id*. at 1191 (citations omitted).

Just as the federal district court rejected the plaintiff's reliance on the filed-rate doctrine in *Transit Homes*, albeit for federal jurisdiction purposes, the instant case does not implicate the now-abolished tariff system and related doctrine. Rather, this case is a state court action arising from plaintiff's assigned contractual right to recover unpaid freight charges.[4] Plaintiff filed its complaint in state court, not federal court, and asserted state-based causes of action for breach of contract and unjust enrichment based on the bills of lading. Contrary to Midwest's suggestion on appeal, the ICCTA does not preclude a state-based cause of action for breach of contract and does not render bills of lading unenforceable. See *Cent Transp Int'l v Sterling Seating Inc*, 356 F Supp 2d 786, 787 (ED Mich, 2005) ("No part of the [general preemption provision of the ICCTA] prevents a state law claim on contract by a motor carrier for unpaid shipping charges."). Instead, in cases where the filed-rate doctrine is inapplicable, a carrier's right to recover unpaid shipping charges "arises solely out of the terms of its agreed upon contract with [the shipper],"

---

[4] Notably, after concluding that it lacked subject matter jurisdiction over the plaintiff's claims, the *Transit Homes* court dismissed the plaintiff's claims without prejudice and directed the plaintiff to "refile its claim *in an appropriate state court*." *Transit Homes*, 173 F Supp 2d at 1192 (emphasis added).

*Transit Homes*, 173 F Supp 2d at 1191, meaning that a party that holds a right to recover unpaid freight charges may bring a state law action based on the terms of the contract to which the parties agreed.

We reject Midwest's claims given that common law contract principles apply to bills of lading. This Court recently recognized that "[t]he Michigan Supreme Court has indicated that liability in such shipping matters ordinarily is a matter of contract because it lies against 'the person who required [the carrier] to perform the service.' " *Landstar Express America, Inc v Nexteer Automotive Corp*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 328334); slip op at 4, quoting *Penn R Co v Marcelletti*, 256 Mich 411, 414; 240 NW 4 (1932). Bills of lading may establish binding contractual obligations with regard to the payment of shipping charges.[5] "As a general rule, the shipper-consignor is primarily liable for all charges associated with the shipment of cargo, including demurrage." *CSX Transp, Inc v Meserole St Recycling*, 618 F Supp 2d 753, 766 (WD Mich 2009), citing *Southern Pacific Transp Co*, 456 US at 343, and 4 Paul Sorkin, GOODS IN TRANSIT, § 25.02[3] (2008); see also *New York Cent R Co v Brown*, 281 Mich 74; 274 NW 715 (1937) ("Ordinarily a carrier has a right to look for his compensation to the person who required him to perform the service by causing the goods to be delivered to him for transportation, and that person is generally of course the shipper named in the bill of lading, or the consignor.") (quotation marks and citation omitted); *Landstar Express America*, ___ Mich App at ___; slip op at 4.[6] "The parties to the bill of lading—the shipper, the carrier, and the consignee—are free to alter this default rule of shipper liability and shift payment responsibility to a third party." *CSX Transp*, 618 F Supp 2d at 766, citing *Oak Harbor Freight Lines, Inc v Sears Roebuck Co*, 513 F3d 949, 954-955 (CA 9, 2008). Accordingly, "while the consignor normally is responsible for [shipping] costs, if the parties intend, they can '[u]ndoubtedly' alter this arrangement so the consignor has no liability for shipment costs." *Landstar Express America*, ___ Mich App at ___; slip op at 4, citing *Marcelletti*, 256 Mich at 414, and *Louisville & Nashville RR Co v Central Iron & Coal Co*, 265 US 59, 66; 44 S Ct 441; 68 L Ed 900 (1924).

---

[5] It is noteworthy that Midwest challenges the enforceability of the bills of lading based on the absence of particular terms or pieces of information, such as the agreed upon rate for carriage, yet it is undisputed that Midwest produced the bills of lading itself. It is especially significant that each bill of lading, produced by Midwest, states, "Received – subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, *if applicable, otherwise to the rates, classifications and rules that have been established by the carrier and are available to the shipper on request*." (Emphasis added.)

[6] See *Louisville & NR Co v Cent Iron & Coal Co*, 265 US 59, 67; 44 S Ct 441, 443; 68 L Ed 900 (1924) ("Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges, and his obligation is ordinarily a primary one. This is true, even where the bill of lading contains, as here, a provision imposing liability upon the consignee; for the shipper is presumably the consignor, the transportation ordered by him is presumably on his own behalf, and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied, when one orders them from a dealer.").

The shipper-consignor may alter the presumption of liability by including an express statement to the contrary on the bill of lading or by entering into a separate agreement assigning liability. *CSX Transp*, 618 F Supp 2d at 766; see also *Southern Pacific*, 456 US at 343; *Oak Harbor,* 513 F3d at 954-955. Courts also have held that the presumption of shipper-consignor liability may be overcome "by the parties' course of conduct." *Mediterranean Shipping Co v Best Tire Recycling, Inc*, 848 F3d 50, 53 (CA 1, 2017). However, circumstances sufficient to overcome the presumption must "clearly" indicate that the carrier intended that the shipper would not assume *any* liability or would be released from liability. *Southern Pacific*, 456 US at 336; see also *Missouri Pac R Co v Ctr Plains Indus, Inc*, 720 F2d 818, 819 (CA 5, 1983) ("Payment of those charges is the original responsibility of the shipper. This responsibility may be shifted to a third party, generally the consignee of the shipment. But the transfer of this responsibility *must be clearly established* by the agreement between the parties or the circumstances surrounding the receipt and transportation of the goods.") (emphasis added); *CSX Transp Inc*, 618 F Supp 2d at 768, citing *Southern Pacific*, 456 US at 336, and *Louisville & NR Co*, 265 US at 68.

For example, even an instruction on the bill of lading to send the freight bill to the consignee or a third party, without more, is not sufficient to limit the shipper-consignor's liability. See, e.g., *Louisville & NR Co*, 265 US at 67-68; *Missouri Pac R Co*, 720 F2d at 819; *CSX Transp, Inc*, 618 F Supp 2d at 768-769. Without an adequate showing of an agreement or other circumstances allocating liability away from the shipper, "the shipper-consignor remains presumptively liable for all lawful freight charges." *CSX Transp Inc*, 618 F Supp 2d at 766; see also *Louisville & NR Co*, 265 US at 67-68; *Oak Harbor*, 513 F3d at 954.[7] Accordingly, because bills of lading are enforceable as contracts, and Midwest was identified as the shipper on the bills of lading, Midwest is presumptively liable for the unpaid freight charges unless it proffers sufficient evidence to rebut the presumption of liability. See *S Pac Transp Co*, 456 US at 343.

Midwest did not proffer any evidence indicating that the parties agreed that Midwest would not be liable for any of the shipping charges, that the carrier otherwise assigned exclusive liability for the charges to G & B, or that the carrier was aware of this allocation of liability. In *Louisville & NR Co*, 265 US at 67-68, the United States Supreme Court explained that:

> [T]his inference [of shipper-consignor liability] may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; *that this fact was known by the carrier*; that the parties intended not only that the consignee should assume an

---

[7] See also *In re Modern Bldg Materials Inc Chapter 128 Receivership*, 281 Wis 2d 275, 278; 697 NW2d 90 (2005) ("[L]iability for payment of freight charges is governed by contract law, and . . . there exist common law presumptions that a consignee and a consignor may be liable for the payment of those freight charges. These presumptions may be rebutted, however, by evidence that the carrier and the consignor agreed that the consignor would be liable, exclusively, for such charges. Absent an express contract to that effect, such an agreement may be determined to exist through analysis of the conduct of the parties.") (citation omitted).

obligation to pay the freight charges, *but that the shipper should not assume any liability whatsoever therefor*; or that he should assume only a secondary liability. [Emphasis added; footnote omitted.[8]]

In *CSX Transp, Inc*, 618 F Supp 2d at 769, the United States District Court for the Western District of Michigan wrote:

> [The defendants] argue that the Court should disregard the presumption of liability that attaches to the bills of lading because the parties made separate arrangements for the payment of freight and demurrage charges. This argument is without merit. The parties to a bill of lading may allocate payment responsibilities through a contract separate from the bill. See, e.g., *Oak Harbor*, 513 F.3d at 949. However, where a shipper seeks to avoid liability by alleging the existence of a separate contract the shipper must show not only that a third-party assumed an obligation to pay, but also that the carrier agreed to release the shipper from all liability. *Id*.; *Louisville & Nashville Railroad*, 265 U.S. at 68, 44 S.Ct. 441.

Although the record includes documentary evidence indicating that Midwest and G & B believed that G & B was solely responsible for the freight costs, Midwest failed to proffer any evidence "clearly indicat[ing]" that the parties, including the carrier, specifically intended to *exempt or release* Midwest Molding from all liability.[9] See *CSX Transp, Inc*, 618 F Supp 2d at 768. Likewise, Midwest failed to proffer evidence indicating that the parties " '[u]ndoubtedly' alter[ed] [the presumptive] arrangement so the consignor has no liability for shipment costs." *Landstar Express America*, ___ Mich App at ___; slip op at 4 (citation omitted; emphasis added). Even though the affidavits proffered by Midwest indicate that the company did not *agree* to be responsible for the charges, this fact fails to negate the *presumption* of liability, which was Midwest's burden to rebut. In addition, Midwest failed to mark the nonrecourse provision in the bills of lading, and the bills of lading contain no other statements regarding liability. The bills of lading identify G & B as the party to be billed, but this identification is not sufficient to relieve Midwest of liability for the freight charges. See *Louisville & NR Co*, 265 US at 68-69; *Missouri Pac R Co*, 720 F2d at 819; *CSX Transp, Inc*, 618 F Supp 2d at 768-769.

---

[8] See also *CSX Tansp*, 618 F Supp 2d at 767 ("In *Louisville & Nashville Railroad*, the Supreme Court held that the shipper can rebut this presumption by showing that (1) it was not acting on its own behalf; (2) this fact was known by the carrier; (3) the parties intended another person assume the primary obligation to pay; and (4) the parties intended that the shipper or consignor 'should not assume any liability whatsoever.' ") (citations omitted).

[9] For example, Kim Anzell's affidavit states that G & B "was solely responsible for the payment of the freight transportation charges relating to movement of the parts from Illinois to Alabama." However, this statement does not, on its own, establish that the parties mutually agreed that Midwest would be exempt from *all* liability for the freight charges. Additionally, as discussed below, the fact that plaintiff routinely sought payment from G & B also does not establish that the parties agreed that Midwest Molding would not be liable for shipping charges.

Accordingly, our review of the record confirms that the trial court properly concluded that Midwest failed to demonstrate a genuine issue of material fact as to whether the presumption of liability was rebutted through a separate agreement that released Midwest from liability.

Course of conduct or dealing may be a relevant consideration in determining whether the parties separately allocated liability. See, e.g, *Mediterranean Shipping Co*, 848 F3d at 54 (discussing the way in which "explicit promises and course of conduct independent of the bill of lading" may make a party liable to a third party for freight charges) (quotation marks and citation omitted); *EIMSKIP v Atl Fish Mkt, Inc*, 417 F3d 72, 77 (CA 1, 2005) ("Yet *Louisville & Nashville R.R. Co.* itself, as well as circuit courts in subsequent cases, have held that this pattern and presumption can be overcome by statute, by contractual provisions, or by the parties' course of conduct."); *Jackson Rapid Delivery Serv, Inc v Thomson Consumer Elecs, Inc*, 210 F Supp 2d 949, 952 (ND Ill, 2001) ("The consignor . . . generally remains primarily liable unless the bill of lading or a course of dealing provides otherwise."), citing *Southern Pacific Transp Co*, 456 US at 343. Here, Midwest proffered no evidence indicating that the parties, through their course of conduct, intended for G & B to be *solely* liable for the costs.

Despite this, Midwest argues that the course of dealing between the parties—under which G & B paid plaintiff and arranged the timing of the shipments—establishes that only G & B is liable for the unpaid freight charges. Midwest analogizes this case to *Thunderbird Motor Freight Lines v Seaman Timber Co*, 734 F2d 630 (CA 11, 1984). In *Thunderbird*, the United States Court of Appeals for the Eleventh Circuit held that the seller of goods was not liable to the carrier for unpaid freight charges because there was insufficient evidence to demonstrate that the seller was the shipper or consignor, as the seller was not involved in contracting with the carrier for transportation of the goods, it had little contact with the carrier regarding shipment, it did not draft the bills of lading, and it "simply had no interest in the arrangements between [the buyer and the carrier] whatsoever." *Id.* at 631-633. In the instant case, even if we assume that Midwest was minimally involved with the shipment logistics, it is undisputed that Midwest drafted the bills of lading. Therefore, unlike the seller in *Thunderbird*, holding Midwest liable for the freight charges would not constitute "b[inding Midwest] to the terms of a bill of lading entirely the result of business dealings between the carrier and another party." *Id.* at 633.

We agree with plaintiff that the case before us is analogous to *Bestway Sys, Inc v Gulf Forge Co*, 100 F3d 31 (CA 5, 1996) (affirming the district court's decision and attaching a copy of the district court's opinion to the court of appeals opinion). There, the plaintiff purchaser selected the carrier that would deliver the goods and entered into a contract with that carrier, and there was no communication between the carrier and the defendant shipper before the carrier arrived to pick up the goods. *Id*. at 32-33. However, the defendant prepared and signed the bills of lading and provided the documents to the carrier when the carrier picked up the defendant's merchandise. *Id*. at 32. The word "shipper" appeared before the defendant's name on the bills of lading, and "[t]here [was] no place on the bill of lading, in either the preprinted form portion or the typed portion thereof, in which the name of the 'consignor' [was] to be stated; nor [did] anything on the bill of lading otherwise indicate or suggest that the 'shipper' or [the defendant] was not the consignor or that the 'shipper' and the consignor might be different entities." *Id*. Accordingly, in light of the defendant's failure to sign the nonrecourse provision, the defendant was liable to the plaintiff carrier for unpaid freight charges because "under the circumstances the

only proper interpretation of the bills of lading is that [the defendant] was the consignor therein." *Id*.[10]

Similarly, here, the trial court properly found that there was no genuine issue of material fact that Midwest remained liable for the unpaid freight charges as the shipper-consignor.[11]

Midwest also argues that the trial court erroneously granted plaintiff's motion for summary disposition because the carriers' assignment of their rights to collect freight charges to plaintiff was illusory. Midwest contends that the trial court erroneously awarded damages that consisted of broker commissions when the only right that the carriers could assign to plaintiff was their right to recover unpaid freight charges. We need not address these arguments, as Midwest failed to specifically raise these claims in the trial court. See *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993) ("Issues raised for the first time on appeal are not ordinarily subject to review."). Regardless, we will briefly address these claims.

Midwest selectively reproduced the broker-carrier agreements in its brief on appeal, quoting only the portion stating that plaintiff was responsible for the carrier's freight charges. As previously stated, "[c]ontracts must be read as a whole." *Kyocera Corp*, 313 Mich App at 444. Considering the entire contract, it is clear that the broker-carrier agreements provided that the carrier could collect the freight charges from the shipper, or any other party responsible for the freight charges, if plaintiff failed to pay the carrier within a specific time frame. More importantly, the agreements provided that once plaintiff paid the carrier, the right to seek payment from the shipper, "or any responsible third party," was "automatically assign[ed]" from the carrier to plaintiff. Accordingly, the assignments were not illusory.

Lastly, we conclude that Midwest has abandoned its argument regarding the nature of the damages awarded by the trial court. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). Midwest cites no authority regarding the trial court's assessment of damages and fails to explain how the trial court's calculation was improper. Although Midwest provides one citation to an untitled spreadsheet, attached within an exhibit to its response to plaintiff's motion for summary disposition, that includes columns labeled "customer charges" and "carrier charges," among other things, Midwest has neither explained how "customer charges" differed from "carrier charges" nor identified the extent to which the damages requested by plaintiff and awarded by the trial court exceeded the "carrier

---

[10] In reaching its decision, the district court quoted the same rules concerning a shipper's presumption of liability previously recited in this opinion. See *Bestway*, 100 F3d at 34.

[11] We also note that Midwest's arguments on appeal fail to recognize that "[t]wo parties may each make themselves liable to a third party for payment of the same freight on a single shipment—one by a contract reflected in part by the bill of lading and the other by explicit promises and course of conduct independent of the bill of lading." *Mediterranean Shipping Co*, 848 F3d at 54 (quotation marks and citation omitted).

charges." Contrary to Midwest's conclusory statements in its reply brief on appeal, the factual basis for this claim is not apparent from the cited spreadsheet.

> A party may not leave it to this Court to search for authority to sustain or reject its position. An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority. [*Id.*]

## IV. CONCLUSION

Midwest has failed to establish that the trial court improperly granted summary disposition in favor of plaintiff.

We affirm.

/s/ David H. Sawyer
/s/ Henry William Saad
/s/ Michael J. Riordan